**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2008-KP-01699-SCT**

*EDGAR PATTON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/05/2008 |
| TRIAL JUDGE: | HON. R. I. PRICHARD, III |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDGAR PATTON (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL: BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 05/13/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC**.

**DICKINSON, JUSTICE, FOR THE COURT**:

¶1.     In this felony prosecution, the trial court allowed the defendant to represent himself without first obtaining a knowing and intelligent waiver of counsel. We reverse on this important constitutional violation.

**BACKGROUND FACTS AND PROCEEDINGS**

¶2.     Edgar Patton was indicted for the crime of false pretenses. He unsuccessfully represented himself in the trial court. He appeals, claiming as one of nine assignments of error that he did not knowingly and intelligently waive his Sixth Amendment right to counsel. Because this issue is dispositive, we decline to address the others.

**ANALYSIS**

¶3. The United States Constitution's Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."[1] As is true with most constitutional rights, the Sixth Amendment right to counsel can be waived. Indeed, many states' constitutions,[2] including Mississippi's,[3] grant criminal defendants the right to represent themselves. However, it is not enough to say the defendant waived the right to counsel — the waiver must be knowingly and intelligently made. Accordingly, the narrow constitutional question presented is whether Patton's waiver of counsel was knowingly and intelligently made.

**I.**

¶4. Our decision today is framed in the thirty-five-year shadow of *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), wherein the United States Supreme Court stated:

> [T]he integrity of and public confidence in the system are undermined, when an easy conviction is obtained due to the defendant's ill-advised decision to waive counsel. The damage thus inflicted is not mitigated by the lame explanation that the defendant simply availed himself of the "freedom to go to

---

[1] U.S. Const. amend. VI.

[2] *E.g.,* Ariz. Const. art. 2, § 24; Ark. Const. art. 2, § 10; Colo. Const. art. 2, § 16; Conn. Const. art. 1, § 8; Del. Const. art. 1, § 7; Idaho Const. art. 1, § 13; Ill. Const. art. 1, § 8; Ind. Const. art. 1, § 13; Ky. Const. Bill of Rights, § 11; Mo. Const. art. 1, § 18(a); Mont. Const. art. 2, § 24; Nev. Const. art. 1, § 8; N.H. Const. pt. 1, art. 15; N.M. Const. art. 2, § 14; N.Y. Const. art. 1, § 6; N.D. Const. art. 1, § 12; Ohio Const. art. 1, § 10; Okla. Const. art. 2, § 20; Ore. Const. art. 1, § 11; Pa. Const. art. 1, § 9; S.D. Const. art. 6, § 7; Tenn. Const. art. 1, § 9; Utah Const. art. 1, § 12; Vt. Const., cl. 1 art. 10; Wis. Const. art. 1, § 7.

[3] Miss. Const. art. 3, § 26 (1890). *See also* *Gray v. State*, 351 So. 2d 1342, 1345 (Miss. 1977).

jail under his own banner . . . ." The system of criminal justice should not be available as an instrument of self-destruction.

*Id.* 422 U.S. at 839-40 (*citing **United States ex rel. Maldonado v. Denno***, 348 F.2d 12, 15 (2d Cir. 1965)).

¶5.    According to the record, Patton never expressly waived counsel. His only utterance concerning self-representation was when the trial judge asked him if he intended to represent himself and Patton replied: "Well, I'm in consulting." Nevertheless, under the narrow facts of this case as presented in the record, we are satisfied that Patton's actions[4] — coupled with the trial judge's several admonitions that he obtain counsel — amounted to a manifestation of his intent to waive his right to counsel. However, our inquiry on the subject does not conclude until we focus on whether the waiver was knowingly and intelligently made.

**II.**

¶6.    Almost a half-century ago, this Court held that a criminal defendant's waiver of counsel was insufficient unless — prior to accepting the waiver — the trial court determined it was knowingly and intelligently made. ***Conn v. State***, 251 Miss. 488, 170 So. 2d 20 (1964). Specifically, the ***Conn*** Court held:

> While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record. In accordance with these mandatory decisions we hold that there must be an intelligent and competent waiver of counsel by the defendant and that the trial court should so determine, and, further, that such determination, as well as the facts on which it is based, should appear in the record.

---

[4] Although Patton was strongly encouraged by the trial judge to obtain counsel, he never did. Instead, he prepared and filed numerous pretrial motions, filed a witness list for trial, cross-examined the State's witnesses, and called witnesses of his own.

*Id.* at 23 (*citing White v. Maryland*, 373 U.S. 59, 83 S. Ct. 1050, 10 L. Ed. 2d 193 (1963);

*Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964); *United States*

*ex rel. Goldsby v. Harpole*, 263 F.2d 71, 83 (5th Cir. 1959)).

¶7.    In *Faretta*, the United States Supreme Court stated:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, **he should be made aware of the dangers and disadvantages of self-representation**, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

*Faretta*, 422 U.S. at 835 (emphasis added) (internal citations omitted).

¶8.    The "dangers and disadvantages" of self-representation require that appellate courts

may uphold waivers of the right to counsel only where the defendant's decision to proceed

pro se was made knowingly and intelligently. *United States v. Joseph*, 333 F.3d 587, 589

(5th Cir. 2003); *United States v. Virgil*, 444 F.3d 447, 452 (5th Cir. 2006).  Accordingly, it

is to the "dangers and disadvantages of self-representation" of concern to the *Faretta* Court

— and to how we ensure defendants are made aware of them before waiving counsel — that

we now turn.

### III.

¶9.    We fully recognize that every case is different.  The circumstances presented to a trial

court will always require a case-by-case evaluation. *Curlee v. State*, 437 So. 2d 1, 2 (Miss.

1983).  However, while courts have not always agreed on exactly what must be done to

4

confirm that a waiver was knowingly and intelligently made, they generally agree that *something* must be done.

*Rule 8.05[5]*

¶10.    In providing assistance to trial judges faced with pro se criminal defendants; in setting forth the minimum examination that must take place to ensure that waivers of the right to counsel are knowingly and intelligently made; and in addressing the "dangers and disadvantages of self-representation" mentioned in **Faretta**, this Court — pursuant to its constitutional duty and authority to make rules governing the judiciary — promulgated Rule 8.05, which provides:

> When the court learns that a defendant desires to act as his/her own attorney, the court **shall**[6] on the record conduct an examination of the defendant to determine if the defendant knowingly and voluntarily desires to act as his/her own attorney. The court shall inform the defendant that:
>
> 1.    The defendant has a right to an attorney, and if the defendant cannot afford an attorney, the state[7] will appoint one free of charge to the defendant to defend or assist the defendant in his/her defense.
>
> 2.    The defendant has the right to conduct the defense and that the defendant may elect to conduct the defense and allow whatever role (s)he desires to his/her attorney.
>
> 3.    The court will not relax or disregard the rules of evidence, procedure or courtroom protocol for the defendant and that the defendant will be bound by and have to conduct himself/herself within the same rules as

---

[5] URCCC 8.05.

[6] This Court has held that, "unlike the discretionary nature of 'may,' the word 'shall' is a *mandatory* directive. . . . *no discretion* is afforded the trial judge." **Ivy v. Harrington**, 644 So. 2d 1218, 1221 (Miss. 1994) (emphasis in original).

[7] The term "state" appears to be an error in the rule. It is the court, not the state, that appoints counsel for indigent defendants.

5

an attorney, that these rules are not simple and that without legal advice his/her ability to defend himself/herself will be hampered.

4. The right to proceed pro se usually increases the likelihood of a trial outcome unfavorable to the defendant.

5. Other matters as the court deems appropriate.

After instructing the defendant and ascertaining that the defendant understands these matters, the court will ascertain if the defendant still wishes to proceed pro se or if the defendant desires an attorney to assist him/her in his/her defense. If the defendant desires to proceed pro se, the court should determine if the defendant has exercised this right knowingly and voluntarily, and, if so, make the finding a matter of record. The court may appoint an attorney[8] to assist the defendant on procedure and protocol, even if the defendant does not desire an attorney, but all disputes between the defendant and such attorney shall be resolved in favor of the defendant.

URCCC 8.05 (emphasis added).[9]

¶11. Thus, according to the rule's mandatory provisions, the trial judge in this case was required to advise Patton — on the record — of his rights and the warnings set forth in the rule. Then, having set forth those rights and warnings, and having made sure Patton understood them, the trial judge was required to ascertain if Patton still wished to proceed pro se, or if he wanted an attorney to assist him in his defense. If, after being advised of the rights and warnings as required by the rule, Patton still wished to proceed pro se, the court was required to determine whether Patton's waiver was knowingly and voluntarily made. And all of this should have been on the record.

---

[8]This provision assumes the defendant is indigent. If not, the trial court must inform the defendant of the right to employ an attorney "to assist the defendant on procedure and protocol."

[9]The trial court did not comply with Rule 8.05's requirements, including the disclosures required by Rule 8.05(1) and (2), and the warnings required by Rule 8.05(3) and (4).

6

¶12.   And as a final matter, if Patton — having been fully informed of the matters set forth in the rule — waived his Sixth Amendment right to assistance of counsel, then the court was required to consider whether Patton needed an attorney to assist on procedure and protocol, even though he did not desire an attorney to try his case.

¶13.   According to the record before us, the trial judge wholly failed to comply with the requirements of Rule 8.05.  During a May 13, 2008, motions hearing, the trial judge stated:

> Let the record show that on August 9, '07, the defendant was present in court and stated he would represent himself; that on February 26, 2008, the Court advised him he needed to hire an attorney, and he was to let the Court know upon hiring an attorney.
>
> On March 6th, '08, he was to hire an attorney or represent himself, which he chose.[10]  The case was at that time set for May 29.  The case is set for that time.[11] The Court assumes Mr. Patton has chosen to represent himself.

After ruling on the motions, the trial judge stated:

> THE COURT:  So I believe that tends to the motions.  Now, I would like to ask you, the case is set in August, as you know. The Court is [*sic*] advised you that with this charge pending, the Court believes that it would be in your best interest to employ an attorney.
>
> . . .
>
> THE COURT: Now, again, as I was going to do and attempt to do, is, of course, to give you my advice to hire an attorney, which I've been doing for the period of time.  For reasons I don't know and may not be entitled to know, you intend to represent yourself; is that correct?
>
> DEFENDANT PATTON: Well, I'm in consulting.

---

[10] From these brief references, it appears that the trial court and Patton may have previously discussed Patton's desire to represent himself.  However, the record includes no transcript, or any other evidence, of the content of any such discussions.

[11] The trial judge later corrected himself and stated that the trial date was August 28.

7

THE COURT: Okay. Let me put it this way, Mr. Patton: You know when your trial date is, you know when the next docket call is. Whether you choose to hire an attorney or not, of course, that's your decision. This Court is satisfied you've been able to do so. So you be ready to go to trial, with or without an attorney, on the day it's set.

¶14. Although the trial judge did warn Patton that he had better "be ready to go to trial, with or without an attorney," he provided none of the warnings required by Rule 8.05. Nothing was said about Patton waiving his Sixth Amendment right to assistance of counsel. And Patton's only statement in the entire transcript regarding a waiver of his right to counsel was: "Well, I'm in consulting." While this cryptic pronouncement, together with Patton's actions, may amount to an implied waiver of counsel, it hardly qualifies as one which was knowingly and intelligently made.

¶15. Faced with the trial court's failure to comply with the requirements of Rule 8.05, and finding no evidence in the record that Patton was warned of the dangers and disadvantages of self-representation, we cannot conclude that Patton knowingly and intelligently waived his Sixth Amendment right to assistance of counsel.

**IV.**

¶16. In its brief to this Court, the State includes the following heading for Issue II: "Defendant Chose to Represent Himself and Was Aware of the Perils." Following this heading, however, the State says nothing about the "perils." The State does not even attempt to proffer an argument that Patton was warned, or actually knew, of the "dangers and disadvantages of self-representation" mentioned in *Faretta*. The only case cited by the State is *Jackson v. State*, 1 So. 3d 921 (Miss. Ct. App. 2008), wherein the Court of Appeals

8

correctly held that "a waiver of the right to assistance of counsel . . . must be made with a full understanding of its disadvantages and consequences." *Id*. at 924-25.

¶17. Rule 8.05 was designed, in part, to provide trial judges a method of making sure criminal defendants' waivers of counsel are knowing and intelligent. However, this case is less about a Rule 8.05 violation than about the trial court's failure to obtain a knowing and intelligent waiver of the right to counsel, as guaranteed by the Sixth Amendment. We cannot overlook the trial court's failure to do so, and we cannot find that failure was harmless error. While we agree that some constitutional violations are subject to harmless-error analysis, violations of rights *essential* to a fair trial (structural violations) clearly are not, nor should they be.

¶18. Simple logic requires us to conclude that when something essential to a fair trial did not happen, the trial was not fair. Were we to conclude otherwise, then the thing missing was not actually essential. The vast and consistent caselaw on this point clearly establishes that compliance with the Sixth Amendment is essential to a fair trial, and that a trial court's failure to make sure a Sixth Amendment waiver is knowing and intelligent is per se reversible error, and not subject to a harmless-error analysis.

¶19. In *Sullivan v. Louisiana*, 508 U.S. 275, 282, 113 S. Ct. 2078, 124 L. Ed. 2d 182, the Supreme Court held that a Sixth Amendment violation "unquestionably qualifies as 'structural error.'" In *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302, the Court held that a Sixth Amendment violation "def[ies] analysis by 'harmless error' standards" because it "affec[ts] the framework within which the trial

9

proceeds" and is not "simply an error in the trial process itself."[12]  And this Court has held that "[t]he right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours."  *Conn*, 170 So. 2d at 23.

¶20.    The hallmark Sixth Amendment case is *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), wherein Clarence Earl Gideon defended himself on a charge of robbing a pool hall.  After overwhelming evidence of guilt was produced in his first trial,[13] Gideon was convicted.  The United States Supreme Court reversed, holding that the Sixth Amendment right to counsel was a fundamental right that is "essential to a fair trial." *Gideon*, 372 U.S. at 342.[14]

## V.

---

[12] *See also* ***United States v. Gonzalez-Lopez***, 548 U.S. 140, 149-50, 126 S. Ct. 2557, 2566, 165 L. Ed. 2d 409 (2006); ***Johnson v. Zerbst***, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); ***United States v. Chamberlain***, 326 Fed. Appx. 640, 642 (3d Cir. 2009) (***Faretta***-type error is structural, and requires automatic reversal); ***United States v. Forrester***, 512 F.3d 500, 506-09 (9th Cir. 2008) (harmless error analysis does not apply in context of Sixth Amendment violation)**; *King v. Bobby***, 433 F.3d 483, 490 (6th Cir. 2006); ***United States v. Jones***, 452 F.3d 223, 230 (3d Cir. 2006) ("When a waiver is deemed ineffective — i.e., not knowing, intelligent, and voluntary — there is no harmless error review, and the conviction must be vacated and the case remanded for a new trial."); ***United States v. Barnett***, 398 F.3d 516, 526 (6th Cir. 2005); ***United States v. Erskine***, 355 F.3d 1161, 1167 (9th Cir. 2004) ("On appeal, the burden of establishing the legality of the waiver is on the government."); ***United States v. Arlt***, 41 F.3d 516, 520-21 (9th Cir. 1994) ("courts indulge in every reasonable presumption against waiver") (*quoting* ***Brewer v. Williams***, 430 U.S. 387, 404, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977)); ***United States v. Mohawk***, 20 F.3d 1480, 1484 (9th Cir. 1994) (government's burden is "a heavy one").

[13] An eyewitness testified he saw Gideon rob the coin machines in a pool hall and leave in a cab.  A police officer testified he found Gideon shortly after the robbery with a large number of coins in his pocket.

[14] In his second trial, with the assistance of counsel, Gideon was found not guilty.  His counsel produced substantial evidence that the "eyewitness" from the first trial was probably the look-out for the actual perpetrator of the crime, and that the coins found in Gideon's pocket were from a poker game.

10

¶21.    The State argues that "the trial court, gently, made sure that defendant was not prejudiced by his unfamiliarity with the rules and the law."  This statement is not only unsupported by the record, but is in stark contrast to the following:

(1)  On the second page of the transcript is found a discussion of Patton's pretrial motions.  The trial judge states:

> There are motions pending before the Court.  The first is a motion to sever charges or defendants.  Let the record show that in this cause, there's only one defendant, so I don't know who the movant intends to sever.  There's only one charge, so I don't know what charges the defendant intends to sever.

One has difficulty concluding that a defendant who filed a motion to "sever charges or defendants" in a single-charge, single-defendant case, "knew exactly what he is doing."

(2)  The following exchange involving the Patton, the trial judge, and Assistant District Attorney Sweatt took place after the State rested its case-in-chief:

THE COURT (to Patton): Who do you call as the first witness?

PATTON: Detective Albert Preston.

THE COURT: I believe he needs to be sworn; is that correct?

MR. SWEATT: May we approach the bench, Your Honor?

THE COURT: Yes.

MR. SWEATT: We subpoenaed him and I didn't need him.  I think he's going to be available, but we've got to call him and get him up here.

THE COURT: You subpoenaed him?

MR. SWEATT: Yes.

THE COURT: Did you put him on your witness list?

MR. PATTON: I believe I did, sir.

THE COURT: You didn't subpoena him?

MR. PATTON: But I assumed from Mr. Sweatt he had been called. That's the reason I did not.

MR. SWEATT: Well —

THE COURT: How long will it take to get him up here?

MR. SWEATT: It won't take long if he's on duty. I'll ask Jeff to call.

THE COURT: What is the purpose? Is he the one that made the complaint?

MR. PATTON: Yes, sir. Basically he initiated the complaint. I was wondering if before the charges asking him, you know, telling him conditions of the charge.

THE COURT: But it doesn't matter, you didn't file a motion to suppress. That's irrelevant. Who do you call as your next witness?

MR. PATTON: I can't get him?

THE COURT: No. That's irrelevant on the charge part.

Patton was not allowed to question Detective Preston.

(3) As far as can be told by review of the record, Patton was never arraigned, and never waived arraignment. Instead, a curious proceeding took place on the morning of trial, at the trial judge's bench, rather than in open court. Although the record includes no transcript of what was actually said, the court reporter made the following notation in the trial transcript:

> (AT THE BENCH, OUTSIDE THE HEARING OF THE JURY, THE DEFENDANT WAIVED THE FORMAL READING OF THE ARRAIGNMENT[15] AND ENTERED A PLEA OF NOT GUILTY TO THE CHARGE OF FALSE PRETENSE.)

---

[15] We presume the court reporter meant "indictment" rather than "arraignment."

12

Although this procedure raises many questions, we shall say no more than to point out that

trial judges are required to conduct arraignments in open court,[16] and an unrecorded bench

conference, held outside the hearing of the jury (and presumably the spectators), does not

qualify as "open court."

(4) The following took place during Patton's cross-examination of one of the State's

witnesses:

BY MR. PATTON: Well, have you ever been convicted of a crime?

A. Is that relevant?

Q. It goes to honesty.

THE COURT: If you want to frame the question properly, I'll admit it. But that's not a proper form of the question.

BY MR. PATTON: Have you ever been convicted of a crime, I mean?

THE COURT: There are all kinds of crimes. Some go to truth and veracity, others don't.

BY MR. PATTON: Have you ever been married prior to being married now?

The trial court's interjection amounted to an objection on behalf of the State (the prosecutor

never said a word concerning Patton's question). Furthermore, the trial court's implication

– that unless the conviction related to "truth and veracity" it was inadmissible – was patently

incorrect.[17] And while it is certainly within a trial judge's discretion to sua sponte comment

---

[16]URCCC 8.01.

[17] *See* Mississippi Rules of Evidence 609(a)(1), which requires no evidence that the crime involved truth or veracity.

13

on an objectionable question, we find it rarely happens where defendants are represented by counsel.

¶22.    As this Court stated in **Conn**, "[e]ven the intelligent and educated layman has small and sometimes no skill in the science of law." **Conn**, 170 So. 2d at 23 (citing **Powell v. Alabama**, 287 U.S. 45, 68-69, 53 S. Ct. 55, 64, 77 L. Ed. 158 (1932)).

**CONCLUSION**

¶23.    We must reverse Patton's conviction because nothing in the record supports the State's contention that he knowingly and intelligently waived his Sixth Amendment right to counsel, and because the trial court failed to follow the mandatory requirements of Rule 8.05. Were our decision today different, the ramifications would extend far beyond this case. Our trial judges and lawyers would be left to wonder whether Rule 8.05, or any other rule, means what it says. It is no small concern to us that our rules and statutes are replete with provisions of what "shall" and "shall not" be done. Were we to hold otherwise, the bench and bar would surely wonder what definition *de jour* this Court might apply to "shall" in future cases.

¶24.    In **Box v. State**, 437 So. 2d 19 (Miss. 1983), this Court — finding the prosecutor had violated Rule 4.06[18] — reversed a conviction for armed robbery, stating: "A rule which is not enforced is no rule." **Id**. at 21-22. And more recently in **Sanders v. State**, 9 So. 3d 1132 (Miss. 2009), we reversed a conviction because the trial court failed to conduct an on-the-record mental competency hearing, as required by Rule 9.06.[19] **Id**. at 1136-39.

---

[18] URCCC 4.06.

[19] URCCC 9.06.

¶25. This Court's constitutional power to promulgate judicial rules is no small thing. It is an awesome responsibility, but no less so than our duty to enforce those rules fairly, evenly, and predictably. The bench and bar are entitled to rely on this Court to apply the rules no less diligently to the courts than to the lawyers and litigants. And when a rule that we promulgated says a trial court "shall" do a thing, justice and fairness demand that, absent extremely unusual circumstances, we either require trial courts to do it, or change the rule.

¶26. Many of our lawyers, I expect, have at one time or another experienced wrath from the bench over their (or their clients') failure to comply with the rules. Were we in this case to excuse the trial judge's failure to comply with Rule 8.05's mandatory requirements, we would risk substantially — and understandably — compromising the judiciary's credibility in the eyes of those lawyers and others. For this reason, and because we find Patton did not knowingly and intelligently waive his Sixth Amendment right to assistance of counsel, we reverse and remanded to the trial court for action consistent with this opinion.

¶27. **REVERSED AND REMANDED.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY. KITCHENS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, J.; GRAVES, P.J., JOINS IN PART**.

**KITCHENS, JUSTICE, SPECIALLY CONCURRING:**

¶28. I agree with the majority that Patton's conviction should be reversed based on the trial judge's failure to ensure that Patton knowingly and intelligently waived his right to counsel. Although that issue is dispositive, I write separately to discuss the woefully inadequate indictment.

15

¶29. Our state and federal constitutions guarantee criminal defendants the specific right "to be informed of the nature and cause of the accusation." U.S. Const. amend. VI; Miss. Const. art. 3, § 26. An indictment also must contain "sufficient facts to enable [the defendant] to plead double jeopardy in the event of a future prosecution for the same offense." *Berry v. State*, 996 So. 2d 782, 786 (Miss. 2008) (quoting *Gilmer v. State*, 955 So. 2d 829, 836-37 (Miss. 2007)). *See* U.S. Const. amend. V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"); Miss. Const. art. 3, § 22 ("[n]o person's life or liberty shall be twice placed in jeopardy for the same offense"). To safeguard these constitutional rights, this Court has declared that "[t]he indictment upon which the defendant is to be tried shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation against him." *Nguyen v. State*, 761 So. 2d 873, 874 (Miss. 2000). *See also* URCCC 7.06 (using identical language).

¶30. The crime of false pretense is codified at Mississippi Code Section 97-19-39. The statute provides for a misdemeanor and a felony. Miss. Code Ann. § 97-19-39 (Rev. 2006). Liability for the felony depends upon whether the value of the thing(s) obtained by false pretense is more than five hundred dollars. Miss. Code Ann. § 97-19-39(2) (Rev. 2006). Patton was convicted of the felony under Section 97-19-39(2), which provides:

> Every person, who with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, with a value of Five Hundred Dollars ($500.00) or more, upon conviction thereof shall be guilty of a felony and punished by imprisonment in the State Penitentiary not exceeding ten (10) years, and by a fine not exceeding Ten Thousand Dollars ($10,000.00).

16

Miss. Code Ann. § 97-19-39(2) (Rev. 2006).[20]

¶31.   The indictment charged Patton with the following:

> [O]n or about the 22nd day of July, A.D., 2005[,] EDGAR PATTON did
> intentionally, willfully, designedly with intent to cheat and defraud Priscilla
> Watts Newsom and Isadore Newsom by selling to Priscilla Watts Newsom and
> Isadore Newsom a 1981 Crimson 14 x 65 trailer bearing serial number
> ALW12614777 that the defendant did not own and the defendant Edgar Patton
> did obtain money on the said trailer, contrary to and in violation of Section 97-
> 19-39 of the Mississippi Code of 1972, as amended, against the peace and
> dignity of the State of Mississippi.

¶32.   Patton argues on appeal that the indictment was defective because it failed to notify
him whether the crime charged was a felony or a misdemeanor.  The State argues that the
indictment is saved by its citation to the false pretense statute, but the citation does not
specify the subsection pertaining to felonies.  Yet, even if the prosecutor had included the
proper subsection in the charging document, this would not have saved the indictment;
statutory citations constitute mere surplusage and will not cure a fatally defective indictment.
***Cowan v. State***, 399 So. 2d 1346, 1351 (Miss. 1981).

¶33.   Clearly, the indictment is defective for failing to notify Patton that he was charged
with a felony.  The indictment neither uses the essential adverb *feloniously* nor does it allege
that the value of the property involved was $500 or more.  This Court has held that the value
of a stolen item is an essential element of grand larceny, and the State's failure to prove the

---

[20]Before the 2003 amendment, Mississippi Code Section 97-19-39 did not explicitly
distinguish between felony and misdemeanor false pretense offenses, although the statute did
prescribe two sets of sentencing options, one of which, in practice, was applied to
misdemeanors, and the other to felonies, depending on the way the offense was pled in the
charging document.  Even if a felony were pled, the trial court, quite properly, would
sentence a convicted person as a misdemeanant if the value proven did not meet the threshold
prescribed for felonies.  *See* Miss. Code Ann. § 99-19-17 (Repealed 2003).

value warranted resentencing for petit larceny. *Henley v. State*, 729 So. 2d 232, 238 (Miss. 1998). Although Patton's case involves false pretense and not grand larceny, there is no meaningful distinction for purposes of this analysis. Because the false pretense statute provides different levels of punishment depending on the value of the property obtained by means of the false representation, value is an essential element of the crime of felonious false pretense. Numerous Mississippi cases have held that the failure to include an essential element of the crime in the indictment is a jurisdictional defect that cannot be cured with extrinsic proof. *See Banana v. State*, 635 So. 2d 851, 853 (Miss. 1994); *Copeland v. State*, 423 So. 2d 1333, 1336 (Miss. 1982) (citing *Brewer v. State*, 351 So. 2d 535 (Miss. 1977)). Thus, the indictment's failure to charge an essential element of the crime, value, violates fundamental federal and state constitutional rights and requires automatic reversal.

¶34. However, the indictment's defects surpass the failure to charge the degree of the crime. "The gravamen of the offense of false pretenses is a false representation of a past or existing fact, made by [the] accused with knowledge of its falsity and with intent to deceive, a reliance thereon, and the obtaining of something of value thereby without compensation." *Young v. State*, 209 So. 2d 189, 189 (Miss. 1968) (citing 35 C.J.S. False Pretenses § 6 (1960)). "Furthermore, the property or money obtained under false pretenses must have been 'to the detriment or injury of the person from whom he obtains the same.'" *Allred v. State*, 605 So. 2d 758, 761 (Miss. 1992) (quoting *Carter v. State,* 386 So. 2d 1102, 1105 (Miss. 1980)). Thus, "[o]rdinarily, an indictment for obtaining property by false pretenses must allege to whom the property obtained belonged." *Young*, 209 So. 2d at 189-90 (citing 35 C.J.S. False Pretenses § 44b (1960)). The indictment in the instant case fails on almost all

18

levels, for it does not allege that Patton made a representation that he knew to be false, that the Newsoms relied on this misrepresentation to their detriment, or that the money which Patton obtained belonged to the Newsoms.

¶35.   Patton, acting *pro se*, filed a pretrial motion to have the indictment dismissed. The motion alleged that the indictment failed to inform Patton of the charge against him, but it did not expound on that assertion. Instead, Patton rambled irrelevantly about freedom of speech and the freedom to contract and whether the trailer was a "Crimson" or a "Redman." He never argued that the indictment failed to allege a felony, and the first time he raised this crucial issue was on appeal, and then only in his reply brief.

¶36.   Patton clearly was not capable of providing himself effective representation. An indictment is a technical document of critical importance and must be very fact intensive to charge felony false pretense properly. In this case, a trained legal eye would have spotted the indictment's numerous deficiencies and a competent criminal lawyer would have pled and argued a demurrer. That Patton did not have the benefit of competent counsel, who could have made and argued a proper challenge to the indictment, highlights the importance of the trial judge's ensuring that Patton knowingly and intelligently waived his right to counsel. It is clear that Patton did not understand what was at stake or the high level of technical skill and knowledge essential for a proper defense. Equally clear is that the learned trial judge fell far short of adequately apprising him in these regards. Thus, it cannot be said that this defendant's waiver of his right to counsel was knowingly and intelligently made. Perhaps on remand, with the defendant's being represented by counsel, the indictment will be properly addressed.

¶37. Suffice to say that even a member of the Bar not well versed in criminal law and procedure would not be in a significantly better position than Patton was to defend himself or herself on such a charge in a competent manner. Under established Mississippi law and practice, a false pretense indictment is a more complex pleading than a non-capital murder indictment. A properly drafted false pretense indictment is replete with essential legalese, long required by this Court, that would be unfamiliar to most attorneys, even law professors, other than those with significant experience as prosecutors, criminal defense attorneys or judges in Mississippi's criminal courts. Of course, the ability to identify and respond to a defective indictment, such as the one in this case, is but one qualification necessary to the effective defense of a felony prosecution. The record provides no indication that Patton was qualified in any respect to defend himself, or that he even began to understand what would be involved in such an undertaking.

¶38. No matter what kind of criminal charge had been alleged against Patton, or any other person similarly situated in our court system, it would have been the duty of the trial judge to spend some time apprising the lawyerless litigant of the perilous path of *pro se* representation. At a minimum, the judge in this case should have questioned Patton, on the record, in accordance with the simple recipe provided in Rule 8.05. The judge had before him the indictment, which, as an experienced and learned jurist, he immediately would have recognized as being deficient. This alone should have heightened his concern that Patton understand the quite predictable folly of proceeding, in a case in which Mississippi has historically required the charge to be pled with a higher-than-usual level of technical specificity, without competent professional assistance. Yet, as aptly noted by the majority,

20

the judge did not do even the minimum required by Rule 8.05. Moreover, as also observed by today's opinion, Patton never clearly waived his right to counsel.

¶39. On remand, perhaps the State and the trial court will note that, if the present indictment is allowed to stand, and if Patton should be convicted under it again, our case law mandates that he be punished as if he were convicted of a misdemeanor. This Court has held that "if the indictment is ambiguous as to which statute applies, the defendant may only be punished under the statute with the lesser penalty." *Jenkins v. State*, 888 So. 2d 1171, 1174 (Miss. 2004) (*Weaver v. State*, 497 So. 2d 1089, 1092 (Miss.1986)). The indictment is ambiguous as to whether subsection (1) or subsection (2) of the false pretense statute applies. Accordingly, the trial court on remand must address whether Patton can be sentenced to any more than six months' imprisonment in the county jail and to a fine no greater than $1,000. Miss Code Ann. § 97-19-39(1) (Rev. 2006).

¶40. In sum, without competent legal assistance, Patton was ill-equipped to defend himself, and I agree with the majority that the case should be reversed based on the trial court's failure to ensure that Patton knowingly and intelligently waived his right to counsel. However, the numerous defects in the indictment also require careful review and appropriate action by the State, the trial court, and Patton's counsel.

**DICKINSON, J., JOINS THIS OPINION. GRAVES, P.J., JOINS THIS OPINION IN PART.**

21