MAXWELL, J.,
for the Court:
¶ 1. More than a decade after he pled guilty and was sentenced for five separate felony convictions, Sheldon J. Perryman succeeded in having a successor judge vacate his sentences. But he is now unsatisfied with his new harsher sentences and argues the imposition of a lengthier term of imprisonment triggers a presumption of vindictiveness on this second judge’s part. We disagree and find the mere fact a new judge imposes a more severe sentence than that imposed by the original sentencer does not, itself, give rise to a presumption of judicial vindictiveness. And absent such a presumption, Perryman must show actual vindictiveness on the successor judge’s part, which we find he has failed to do.
¶ 2. However, we have serious concerns with the voluntariness of Perryman’s waiver of counsel at his resentencing. And upon review, we find the trial judge’s failure to advise Perryman of the “dangers and disadvantages” of self-representation, as required by Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), rendered his purported waiver of his Sixth Amendment right to counsel involuntary. We therefore vacate his sentence and remand for resentencing.
Background
¶ 3. After Perryman allegedly shot four different people with a .38 caliber pistol, a Coahoma County grand jury charged him in December 1998 with four counts of aggravated assault and one count of felon in possession of a firearm. This indictment also alleged Perryman was a habitual offender[1] but did not specify which of the *1051 two statutory sentencing enhancements applied.[2]
¶ 4. The following month, January 1999, Perryman entered negotiated guilty pleas on each of the five counts. And the circuit judge, the late Honorable Elzy J. Smith, sentenced Perryman under the less severe of the two habitual-offender statutes, Mississippi Code Annotated section 99-19-81 (Rev.2007). Though he faced over eighty years’ imprisonment, Perryman received twenty years on each of the four aggravated-assault counts and three years on the firearm charge, with all sentences running concurrently.
¶ 5. More than twelve years later, on August 5, 2011, Perryman filed a motion to correct and modify his sentence. The reviewing judge, the Honorable Charles E. Webster, who had succeeded Judge Smith, treated Perryman’s filing as a motion for post-conviction relief (PCR). The gist of Perryman’s argument was that the felony convictions supporting his habitual-offender status were not crimes “arising out of separate incidents” as required for enhanced punishment under section 99-19-81.
116. In a thorough and well-reasoned opinion, Judge Webster found that because the two shootings arose from the same incident, the statutory requirements for a habitual-offender sentence under section 99-19-81 were not met when Judge Smith sentenced Perryman. So Judge Webster vacated Perryman’s original sentences and ordered that he be resentenced.
¶ 7. The resentencing occurred on January 17, 2012. That day, while Judge Webster was preparing for the hearing, he realized he had not appointed counsel for Perryman. The judge told Perryman he could either appoint counsel and postpone the hearing, or Perryman could waive counsel and be sentenced that day. Though the judge did not follow the requirements of Uniform Rule of Circuit and County Court 8.05, nor advise Perryman of the perils of self-representation, Perryman informed the court he preferred to proceed without counsel and be sentenced that day. The judge allowed Perryman to be heard without counsel.
¶ 8. Perryman asked that he be sentenced to time served, for the twelve years he had been in custody. But Judge Webster rejected his request and instead sentenced him to twenty years on each of the four aggravated-assault counts and three years on the gun charge. He then ordered the sentences in Counts I and II for aggravated assault to run consecutively, not concurrently, as Judge Smith had previously done. Thus, Perryman’s new sentence was essentially forty years, which was twice the former twenty-year mandatory sentence as a habitual offender.
¶ 9. Perryman now appeals, arguing Judge Webster’s more severe sentence gives rise to a presumption of judicial vindictiveness and that his waiver of his Sixth *1052 Amendment right to counsel was not voluntary because he was not advised of the “dangers and disadvantages” of self-representation.
Discussion
¶ 10. We apply a highly deferential standard of review for sentencing matters, leaving the imposition of the sentence to the trial judge’s discretion. Reynolds v. State, 585 So.2d 753, 756 (Miss.1991). Generally, if the sentence does not exceed the statutory maximum, it will not be disturbed on appeal. Wallace v. State, 607 So.2d 1184, 1188 (Miss.1992).

I. Claims of Judicial Vindictiveness of a Successor Judge

¶ 11. While sentences like Perryman’s, which fall within the statutory parameters, typically will not be reversed, Perryman argues the mere fact he received a lengthier sentence after his initial sentence was vacated requires that we presume judicial vindictiveness on the successor judge’s part. As support, he points to North Carolina v. Pearce, 395 U.S. 711, 726, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), where the United States Supreme Court held that a presumption of vindictiveness attaches when a defendant receives a harsher sentence on resentencing by the same judge who imposed the previous sentence. See also Ross v. State, 480 So.2d 1157, 1160-61 (Miss.1985) (adopting Pearce and applying presumption but finding imposition of harsher sentence by judge following new trial and conviction was not violative of United States or Mississippi Constitution).
¶ 12. But this presumption from Pearce is not as absolute as Perryman suggests. Rather, our review shows it has been substantially watered down and even rendered inapplicable in some instances, depending on the particular resentencing. In Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the Supreme Court found it unnecessary to apply the presumption when the second court in a two-tier trial system imposed a longer sentence. And one year later, in Chaffin v. Stynchcombe, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), the Supreme Court held Pearce inapplicable where a jury imposed an increased sentence on retrial.
¶ 13. Though Perryman is correct that the Due Process Clause of the Fourteenth Amendment protects against judicial vindictiveness, “[t]he lesson that emerges from Pearce, Colten, and Chaffin is that the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of ‘vindictiveness.’” Blackledge v. Perry, 417 U.S. 21, 27, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (emphasis added). For example, “[t]he presumption of Pearce does not apply in situations where the possibility of vindictiveness is ... speculative, particularly since the presumption may often ‘operate in the absence of any proof of an improper motive and thus block a legitimate response to criminal conduct[.]’ ” Texas v. McCullough, 475 U.S. 134, 139, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986) (quoting United States v. Goodwin, 457 U.S. 368, 373, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)).
¶ 14. As to Perryman’s case, we find its posture is somewhat akin to that in McCullough. In that case, it was a trial judge’s decision to grant a defendant’s motion for a new trial, not an appellate court’s reversal, that led to resentencing. And after the defendant was retried and subsequently convicted, the judge sentenced him to fifty years instead of the original twenty-year term that had been set by a jury after the first trial. Id. at 138. Reviewing a similar claim of vindictiveness, the Supreme Court recognized *1053 that, “unlike [a] judge who has been reversed,” when a trial judge himself or herself orders a new trial there is “no motivation to engage in self-vindication.” Id. at 139 (quoting Chaffin, 412 U.S. at 27, 93 S.Ct. 1977). Under such circumstances, there is simply “no justifiable concern about institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals.” Id. (quotation marks omitted). So in cases like Perryman’s, the fact that a second sentencer, not an appellate court, granted the requested relief giving rise to the resentencing weighs against applying the presumption.
¶ 15. But the most obvious reason for not applying a presumption of vindictiveness here is that “[t]he presumption is ... inapplicable [where] different sentences assessed the varying sentenees[.]” Id. at 140. This is so because when a different sentencer is involved, “a sentence ‘increase’ cannot truly be said to have taken place.” Id. It is certainly possible in any case where two sentencers are involved, that the second sentencer “will impose punishment more severe” than that of the first. Id. (quoting Colten, 407 U.S. at 117, 92 S.Ct. 1953). “But it no more follows that such a sentence is a vindictive penalty for seeking a new trial than that the first sentencer imposed a lenient penalty.” Id. This common-sense reasoning has not been missed by our own state supreme court, which has also recognized the different dynamic brought about by involvement of a new sentencing judge. See Bush v. State, 667 So.2d 26, 29 (Miss.1996).

A Mississippi’s Approach with Successor Judges

¶ 16. Like our nation’s high court, the Mississippi Supreme Court has also rejected the Pearce presumption in cases of successor judges. When asked to apply the presumption in 1996, our supreme court declined, noting that “[United States] Supreme Court cases have backed away from the ruling in Pearce.” Bush, 667 So.2d at 29. In Bush, a defendant who pled guilty to armed robbery and was sentenced to fifteen years’ imprisonment later sought to set aside his conviction and vacate his sentence before a different judge. Id. The second judge granted the defendant’s motion, vacated his sentence, and set the case for trial. The defendant was then retried, convicted, and resen-tenced, this time by a successor judge. And like Perryman’s case, the sentence imposed by the second judge was more severe — twenty-five years.
¶ 17. Addressing the defendant’s appellate claims of vindictiveness, our supreme court looked to McCullough and similarly reasoned that “[a] judge imposing the second sentence but not the first has no reason to be vindictive concerning the defendant’s attack of the first conviction.” Bush, 667 So.2d at 29. This was particularly true because the judge in Bush who imposed the second sentence had also granted the defendant’s motion to vacate the first sentence on the grounds that he was not properly advised of his rights. Id. According to Justice Pittman, writing for the unanimous court, “It would be preposterous in this situation to assume vindictiveness by [the second judge.]” Id.

B. No Proof of Actual Vindictiveness

¶ 18. We find Bush instructive and tend to agree on these facts with Justice Pittman’s pronouncement, since here we are also faced with a successor judge who set aside a prior sentence. Because Judge Webster did not originally sentence Perry-man, he had “no personal stake in the prior conviction and no motivation to engage in self-vindication.” Chaffin, 412 U.S. at 27, 93 S.Ct. 1977; see also McCullough, 475 U.S. at 138, 106 S.Ct. 976. So *1054 the presumption of vindictiveness does not apply here.
¶ 19. Instead, in cases like this one, “[w]here there is no ... reasonable likelihood [of vindictiveness], the burden remains upon the defendant to prove actual vindictiveness[.]” Alabama v. Smith, 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). And here, we find Perryman fails to meet this burden. Not only was the second sentence well below the statutory maximum terms, but it was also crafted to address the violent nature of Perryman’s admitted criminal acts. Though Perryman had faced over eighty years’ imprisonment, twenty years each on the four subject assault charges and three on the gun count, he was resentenced to forty years — less than half of his potential exposure. And while the second judge acknowledged the two prior aggravated-assault convictions did not subject Perry-man to a habitual-offender sentence, he was still concerned with Perryman’s criminal history, which, as he put it, indicated Perryman had “some violent tendencies.” The judge pointed to the nature of Perry-man’s criminal record and that fact that he had accumulated six separate aggravated-assault convictions, all of which, the record shows, resulted from Perryman shooting people.
¶ 20. From this, we simply cannot say Judge Webster crafted a vindictive sentence. Not only did he state his reasons for the sentence, but he also ordered that Perryman receive credit for time served. And he ordered the Mississippi Department of Corrections “to treat the sentence as if it had been imposed as the original sentence” and to afford Perryman consideration of “any and all parole, good time, earned time, etc.,” to which he would have been entitled if he had not been improperly sentenced as a habitual offender by the first judge. Thus, we find Perryman fails to prove actual vindictiveness.

II. Waiver of Right to Counsel

¶ 21. While Perryman’s vindictiveness claim fails, we are, however, concerned with the voluntariness of his waiver of his Sixth Amendment right to counsel at his resentencing. Perryman, who proceeded pro se at resentencing, argues the circuit judge’s failure to advise him of the “dangers and disadvantages” of self-representation, as required by Faretta, rendered his purported waiver of counsel involuntary.
¶ 22. After Perryman was successful in vacating his original sentence, he remained in custody. And it was not until Perryman had been transferred to Coaho-ma County for resentencing that the judge recognized he was “unrepresented.” The judge “apologize[d]” that it just struck him that Perryman was without counsel. He acknowledged Perryman’s right to counsel but explained that, if he appointed an attorney, he would have to “delay” the re-sentencing. The judge admitted this oversight was his “mistake” and that he had not considered Perryman’s not having a lawyer until he got there. The judge again advised Perryman, “I guess you can have a lawyer if you so desire.” But “that’s your decision.... I can go either way.” In response, Perryman told the judge, “I’d prefer — I’m here. I prefer to go ahead with it.” Perryman was then placed under oath and asserted his preference to be sentenced without counsel. At this point, the judge proceeded with the hearing.
¶ 23. Because Perryman had already served twelve years, he urged the court to sentence him to time served. But as mentioned, the judge was clearly troubled by Perryman’s violent criminal record and rejected this request. So he instead sentenced Perryman to what amounted to for *1055 ty years’ imprisonment — essentially twice the original sentence that was vacated.
¶ 24. Considering Perryman’s voluntariness argument, we note the United States Supreme Court has held that while a criminal defendant is entitled to counsel at trial, there is an optional right to defend one’s self. Faretta, 422 U.S. at 814-16, 95 S.Ct. 2525. However, a defendant may only relinquish his or her right to counsel “knowingly and intelligently.” Id. at 835, 95 S.Ct. 2525. And to “competently and intelligently ... chose self representation,” a criminal defendant “should be made aware of the dangers and disadvantages of self representation.” Id. (emphasis added). These perils must be discussed, “so that the record will establish” the defendant “knows what he is doing and his choice is made with eyes open.” Id.
A. Patton, Faretta, and Rule 8.05
¶ 25. Though Mississippi has not specifically addressed the requirements for voluntary waivers of counsel at sentencings, it has done so in the context of trials. And in reviewing Sixth Amendment waivers at trial, our supreme court has stiffly applied Faretta. See Patton v. State, 34 So.3d 563, 566 (¶¶ 7-8) (Miss.2010). The supreme court has also leaned heavily on what it deems the “mandatory ” minimum examination requirements of Uniform Rule of Circuit and County Court 8.05 — a rule promulgated by the Mississippi Supreme Court in response to Faretta “to ensure that waivers of the right to counsel are knowingly and intelligently made” and to address the “dangers and disadvantages of self-representation.” Patton, 34 So.3d at 566 (¶ 10) and n. 6 (discussing URCCC 8.05). “When the court learns that a defendant desires to act as his/her own attorney,” Rule 8.05 imposes two mandatory requirements on the court — “the court shall” examine the defendant on record, and the “court shall inform the defendant” of the consequences of waiving the right to an attorney, including the fact that “[t]he right to proceed pro se usually increases the likelihood of a trial outcome unfavorable to the defendant.” (Emphasis added).[3]
*1056 ¶ 26. In Patton, the supreme court reversed a false-pretenses conviction obtained against the pro se defendant because the trial judge had failed to “comply with the requirements of Rule 8.05” and since there was no evidence Patton was “warned of the dangers and disadvantages of self-representation.” Patton, 34 So.3d at 568 (¶ 15). Without record evidence of these minimum requirements, the court could not conclude Patton voluntarily waived his Sixth Amendment right to counsel. Id. And the court declined to apply harmless-error analysis, since a violation of the Sixth Amendment, a right “essential to a fair trial,” is a structural violation requiring reversal. Id. at 569 (¶ 17).

B. Waivers at Sentencing

¶ 27. The waiver in Patton occurred at trial, not at sentencing. And our supreme court has never specifically spoken about the required examination of a defendant wishing to waive counsel at this different phase of our criminal process. However, it is quite clear that the right to counsel does extend to sentencings. Mempa v. Rhay, 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); see also United States v. Virgil, 444 F.3d 447, 452-53 (5th Cir.2006) (citations omitted) (“The right to counsel extends to the sentencing stage as forcefully as to the guilt phase.”). Much like this right may be waived at trial, criminal defendants may also waive their Sixth Amendment right to counsel at sentencing and proceed pro se. Virgil, 444 F.3d at 453. But they may only do so if the waiver is knowing and intelligent. Id.
¶ 28. So the question we must now decide is what minimal examination and/or warnings are necessary before a defendant may be deemed to have voluntarily waived his or her right to counsel at sentencing.

i. Sentencing Versus Guilt Phase

¶ 29. In crafting the appropriate inquiry, we first note that the sentencing phase of a criminal proceeding obviously differs from the guilt phase. For this reason, courts have held “the inquiry at sentencing need only be tailored to that proceeding and the consequences that may flow from it.” United States v. Salemo, 61 F.3d 214, 219 (3d Cir.1995); see also Virgil, 444 F.3d at 453 (citation omitted) (directing courts to consider “the stage of the proceedings and the setting in which the waiver is advanced”). And while there are inherent difficulties and complexities at both stages of a trial, the sentencing phase is generally viewed as far less complicated than the guilt phase. As one appellate court has recognized, “Sentencing hearings demand much less specialized knowledge than trials,” since, for instance, evidentiary rules do not apply. United States v. Day, 998 F.2d 622, 626 (8th Cir.1993). So it makes sense that in the context of sentenc-ings, the relevant inquiry into a defendant’s desire to waive counsel “need not be as exhaustive and searching as a similar inquiry before the conclusion of trial.” Id.
¶ 30. Though our review of this issue consists mostly of federal methodology, we recognize that, unlike federal district courts, Mississippi’s trial courts are not required to consult sentencing guidelines, the application of which, at times, is complex, requiring “hypertechnical” analysis by lawyers, as well as trial and appellate judges. United States v. Smith, 997 F.2d 396, 398 (8th Cir.1993) (Gibson, J., concurring).
¶ 31. But while our trial judges need not fret over sentencing guidelines, the fact remains that no matter the jurisdiction, “sentencing is a critical and often *1057 times complicated part of the criminal process that contains subtleties which may be beyond the appreciation of the average layperson seeking to represent him/herself.” Salemo, 61 F.3d at 221. Indeed, in recent years, sentencing in both federal and state courts has become more than a mere “exercise in delivering a term of years.” Virgil, 444 F.3d at 456. Now, “it often entails probation, parole conditions, restitution, and other penalties.” Id. In addition to these various complexities, there are also situations where the failure to preserve a sentencing issue could lead to a procedural waiver.
¶ 32. So while sentencing generally demands less specialized knowledge of the nuances of the law, and while the end result, which is greatly within the judge’s discretion, infrequently turns on the advocacy skills of a lawyer, it is still a critical stage of the criminal process. To a criminal defendant, for obvious reasons, the sentencing phase is perhaps the most important moment of the criminal process.

ii. What Inquiry is Sufficient at Sentencings?

¶ 33. With these considerations in mind, and after viewing the practices of our federal courts, we do not find that a rote dialogue and examination, as stringent as that of Rule 8.05, is required of Mississippi trial judges when a defendant seeks to waive counsel at sentencing. But we do find that mere “[p]erfunctory questioning is not sufficient.” Salemo, 61 F.3d at 220 (citing United States v. Welty, 674 F.2d 185, 187 (3d Cir.1982)).
¶ 34. At a minimum, a trial judge must make an inquiry sufficient to satisfy himself or herself that a defendant’s decision to proceed pro se at sentencing is “knowingly and intelligently” made. Faretta, 422 U.S. at 835, 95 S.Ct. 2525. We find the particular inquiry must be specifically tailored to insure a defendant is “made aware of the dangers and disadvantages of self-representation” at sentencing, so that the decision is voluntary and the “choice is made with eyes open.” Id.; see also Virgil, 444 F.3d at 453-55; Salemo, 61 F.3d at 220-21 (finding court’s inquiry concerning waiver of counsel at sentencing must insure defendant is advised of dangers and disadvantages of self-representation); Meyer v. Sargent, 854 F.2d 1110, 1114-15 (8th Cir.1988) (finding that an on-the-record colloquy exploring dangers and disadvantages of self-representation is favored). We find this approach is not only sound, but it also aligns with our supreme court’s strict application of Faretta and its past reliance on federal precedent when assessing Sixth Amendment waivers at trial. See Patton, 34 So.3d at 566-69 (¶¶ 7-20).
¶35. It is obvious the circuit judge here unquestionably sought a valid Sixth Amendment waiver from Perryman. But the fact remains that, in his cursory examination of Perryman, the judge neither expressed the potential perils of self-representation, nor are we able to find such warnings are implied from the record. Because Perryman’s purported waiver was accepted without this minimally required inquiry, we find his sentence cannot stand. We therefore vacate the sentence and remand for resentencing.
¶ 36. THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS REVERSED; THE SENTENCE IS VACATED; AND THIS CASE IS REMANDED FOR RESENTENCING. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, FAIR *1058 AND JAMES, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT.

. The felon-in-possession charge lists one pri- or aggravated-assault conviction. But the circuit judge’s order granting Perryman’s motion for post-conviction relief (PCR) and vacating his prior sentences mentions a police *1051 report describing two prior shooting-based aggravated-assault convictions.

. Compare Miss.Code Ann. § 99-19-81 (Rev. 2007) (imposing mandatory sentence of maximum prescribed term without eligibility for parole where defendant has two or more pri- or felony convictions arising out of separate incidents) with Miss.Code Ann. § 99-19-83 (Rev.2007) (mandating life sentence, also without eligibility for parole, where defendant has been previously convicted of two or more felonies, one of which is a crime of violence). If applicable to Perryman’s case, section 99-19-81 would have required the imposition of a mandatory twenty years on each aggravated-assault charge, and three years for the gun count, without eligibility for parole, whereas section 99-19-83 would have required the imposition of a life sentence, without eligibility for parole.

.In full, Rule 8.05 provides:
When the court learns that a defendant desires to act as his/her own attorney, the court shall on the record conduct an examination of the defendant to determine if the defendant knowingly and voluntarily desires to act as his/her own attorney. The court shall inform the defendant that:
1. The defendant has a right to an attorney, and if the defendant cannot afford an attorney, the state will appoint one free of charge to the defendant to defend or assist the defendant in his/her defense.
2. The defendant has the right to conduct the defense and that the defendant may elect to conduct the defense and allow whatever role (s)he desires to his/her attorney.
3. The court will not relax or disregard the rules of evidence, procedure or courtroom protocol for the defendant and that the defendant will be bound by and have to conduct himself/herself within the same rules as an attorney, that these rules are not simple and that without legal advice his/her ability to defend himself/herself will be hampered.
4. The right to proceed pro se usually increases the likelihood of a trial outcome unfavorable to the defendant.
5. Other matters as the court deems appropriate.
After instructing the defendant and ascertaining that the defendant understands these matters, the court will ascertain if the defendant still wishes to proceed pro se or if the defendant desires an attorney to assist him/her in his/her defense. If the defendant desires to proceed pro se, the court should determine if the defendant has exercised his right knowingly and voluntarily, and, if so, make the finding a matter of record. The court may appoint an attorney to assist the defendant on procedure and protocol, even if the defendant does not desire an attorney, but all disputes between the defendant and such attorney shall be resolved in favor of the defendant.
*1056 (Emphasis added).