PIERCE, Justice,
for the Court:
¶ 1. Jeffrey Lance Hill was indicted by an Oktibbeha County grand jury of possession of a firearm on educational property (the campus of Mississippi State University) in violation of Mississippi Code Section 97-37-17(2) (Rev.2006). In two jury trials, Hill represented himself with the assistance and advice of court-appointed counsel. Hill’s first trial resulted in a hung jury. Hill was found guilty of the indicted offense in his second trial and was sentenced to three years in the custody of the Mississippi Department of Corrections (MDOC) and ordered to pay a $1,200 fine. The trial court denied Hill’s post-trial motion for a new trial or, in the alternative, judgment notwithstanding the verdict (JNOV). This appeal followed.
¶ 2. Hill challenges his conviction based on the following two issues: (I) Whether Hill’s right to counsel and a fair trial under the Sixth Amendment was violated when the trial court refused to allow Hill’s court-appointed counsel, Stephanie Mallette, to withdraw; and (II) whether the trial court erred when it failed to grant Hill’s motion for a new trial on the ground that the verdict was against the overwhelming weight of the evidence.
¶ 3. Finding error as to the first issue, we reverse Hill’s conviction and remand the case to the trial court for a new trial. We decline to address the second issue concerning whether the verdict was against the overwhelming weight of the evidence.
FACTS
¶ 4. In September 2010, the Mississippi State University Police Department received a report that Hill possibly was in possession of a firearm at Aiken Village Apartments on the campus of Mississippi State University. The department sent Detective Steve Westbrook and two other officers to investigate the report. When the officers arrived at Hill’s apartment, Hill’s roommate allowed them to enter. Once the officers were inside, Hill entered the room and spoke with the officers. Out of concern for officer safety, Westbrook asked Hill if there wei-e any weapons in his bedroom, and Hill responded that he had a rifle in his closet. Westbrook and Hill retrieved the weapon together. Hill was then arrested for having a firearm on campus property. Hill told the officers that he had no other firearms, but that he had had ammunition in his vehicle.
*723 ¶ 5. Hill’s first trial in January 2012 resulted in a hung jury. Hill’s second trial in May 2012 resulted in a conviction of the charged offense. Hill chose to represent himself at both trials with the assistance of court-appointed advisory counsel, Stephanie Mallette. The result of the second trial is the only matter before us.
¶ 6. There was no dispute that Hill was in possession of a World War II Era Russian Mosin Nagant rifle, in working condition, and 440 rounds of ammunition, while living at the Aiken Village Apartments. Hill’s defense at trial centered completely on his belief that Aiken Village Apartments were not located on the campus of Mississippi State University (MSU).
¶ 7. During its case-in-chief, the State displayed a campus map and established that Aiken Village Apartments were represented on the map. The State introduced Vicky Gallegos, the Housing Assignment Specialist for MSU Housing and Residence Life, who explained that any student obtaining housing through the university must go online, access his personal student account with his student ID and password, read the housing contract and terms and conditions, then select that the terms have been read and agreed to. Further, the student is instructed to read the “Rules and Regulations” and “Prohibited Items” sections of the web page, which includes the instruction that no firearms, ammunition, and other forms of weapons are allowed on any part of the campus, including student housing. The State admitted evidence demonstrating how these rules were displayed to the student. Gallegos confirmed that Hill could not have applied for housing without reading and acknowledging these rules and that the university received electronic confirmation when Hill acknowledged the terms and regulations. She also provided that the documents explain the complete applicability of the rules to overflow housing.
¶ 8. On cross-examination, Hill sought to show that he was never given a housing contract that specifically stated that Aiken Village Apartments were part of the overflow accommodations or that the apartments were owned by the university. Testimony revealed that Hill was asked by the university and consented to being moved to an overflow accommodation. Exhibits were entered into evidence indicating that Hill had signed his inventory form for Aiken Village, which displayed the university’s name on the form. Also revealed was the fact that Hill’s housing costs were paid from Hill’s student account with the university. Photos also were introduced showing the apartment’s sign including the term “University Housing.”
¶ 9. Hill testified at trial to his belief that he did not live on university property by the fact that the apartments had a Starkville, Mississippi, mailing address, unlike residence halls, which have a Mississippi State, Mississippi, address, with different zip codes. Among other reasons, Hill claimed the apartments did not have the strict parking signs seen on campus, yet he had received a parking ticket for not having a parking decal. He also stated that Aiken Village appears to be outside of campus because he passed the ten-foot wall displaying “Mississippi State University” en route to the apartments, which gave him the impression that he was exiting the campus. Further, he explained that he knew firearms were prohibited on campus, so he had never before brought the rifle from his home in Arkansas until he moved into Aiken Village because of his belief that he was not on university property. Hill stated that he had obtained the rifle for hunting, but testimony from Detective Westbrook confirmed that Hill did not have a hunting license.
*724 ¶ 10. Also during the trial, it became known for the first time that a confidential informant originally had alerted the police about Hill’s possible possession of the firearm. Once the existence of a confidential informant became known, Mallette argued to the trial court the validity of keeping the informant’s identity and statement confidential. Mallette also raised the issue of a discovery violation, since the existence of the informant never before had been mentioned. The State responded that it did not have to reveal the identity of the informant, because Detective Westbrook was the eyewitness to the crime. Prior to the incident, the informant merely had reported to authorities that Hill was possibly in possession of a firearm. After much debate, the trial court ultimately ruled that no discovery violation had occurred and ordered that the police report be provided to the defense after any information regarding the identity of the informant had been redacted. The trial court ordered that a nonredacted copy would be preserved for the record under seal. The State, however, failed to properly redact a portion of the report that was given to Mallette, thereby revealing to Mallette that the informant was Hill’s roommate.
¶ 11. Afterward, Mallette moved the trial court to allow her to withdraw from representing Hill. The trial court heard Mallette’s motion in chambers, on the record. Mallette told the trial court that she could not fulfill her ethical obligation to Hill and as well as her ethical obligation to the trial court not to reveal the informant’s identity as Hill’s roommate. She said she would have advised Hill to call his roommate as a witness, had she been given the report before the trial began. Mallette also explained that Hill previously had consulted with her about when to rest his case, and she was concerned that if he asked her again she would have to advise him to move for a mistrial in order to call the roommate as a witness.
¶ 12. At that point, the trial court considered appointing new advisory counsel, and called in another public defender, Mark Williamson, to represent Hill through the end of trial. The trial court informed Williamson of the conflict that had arisen in Mallette’s representation of Hill, and informed him of what his role would be as Hill’s advisory counsel. Williamson informed the trial court that his first advice for Hill, as his attorney, would be to ask for a mistrial, because he could not act as Hill’s advisory counsel knowing nothing about the case. The court then instructed Mallette that she would remain as advisory counsel and that she should inform Hill that, because of a conflict, she could not advise him on whether to rest his case, if he asked her that specific question.
¶ 13. The State proceeded to call one rebuttal witness, and after cross-examination by Hill, both sides rested. Thereafter, the jury found Hill guilty of possessing a firearm on educational property.
ANALYSIS
I. Whether Hill’s right to counsel and a fair trial under the Sixth Amendment was violated when the trial court refused to allow Hill’s court-appointed advisory counsel, Stephanie Mallette, to withdraw.
¶ 14. Hill argues that the trial court’s actions materially interfered with his defense counsel’s ability to provide loyal assistance to him. Hill further contends that the trial court’s decision not to relieve Mallette from her duty to assist Hill was based in large part on the trial court’s disagreement with the advice that Williamson proposed to give to Hill — to ask for a mistrial. Thus, the trial court deprived him of his right to a fair trial. We agree.
*725 ¶ 15. The trial court has complete discretion when considering a motion to withdraw as counsel. Rubenstein v. State, 941 So.2d 735, 783 (Miss.2006) (citing Taylor v. State, 435 So.2d 701, 703 (Miss.1983)). See also Myers v. State, 254 So.2d 891, 898 (Miss.1971). Limitations must be enforced when considering appointing new counsel to circumvent any maneuvers that interfere with the “orderly procedure in the courts or ... the fair administration of justice.” Rubenstein, 941 So.2d at 783 (citing Taylor, 435 So.2d at 703 (quoting United States v. Bentvena, 319 F.2d 916, 936 (2d Cir.1963))).
¶ 16. On appeal, Hill contends that the denial of Mallette’s motion to withdraw deprived him of his Sixth Amendment right to counsel, thus, an unfair trial resulted.[1] We fully agree with the concurring opinion and its conclusion that Hill’s constitutional rights to assistance of counsel and self-representation were originally jeopardized originally when Mallette was granted her request to withdraw as counsel because of a conflict of interest but simultaneously was assigned to remain in an advisory-counsel capacity. Additionally, we find error in the trial court’s later ruling requiring Mallette to remain as Hill’s advisory counsel when her obligations to the trial court and her obligations to Hill were in conflict.
¶ 17. The record shows, as mentioned, that there was no dispute at trial that Hill was in possession of a firearm while on educational property in violation of Section 97-37-17(2). Hill’s defense throughout trial was that he did not know he was on educational property. During Hill’s cross-examination of Westbrook, while bringing out that defense, information came to light that Westbrook and the other officers had come to Hill’s apartment the day Hill was arrested based on a report from an informant. When Hill asked Westbrook the informant’s name, the State objected on the ground that the informant’s name was confidential. Lengthy debate between Mallette and the State ensued with regard to Mississippi’s discovery requirements in criminal proceedings. Ultimately, the trial court found no discovery violation.
¶ 18. We agree with the trial court’s ruling that revealing the identity of the confidential informant to Hill was not required. Read v. State, 430 So.2d 832 (Miss.1983) (court did not require disclosure of confidential informant who did not participate in the crime in any way but had seen the drugs at the residence and had reported to the police); see also Corry v. State, 710 So.2d 853, 858-59 (Miss.1998) (finding no manifest error in trial court’s decision to deny defendant’s motion to require disclosure of informant’s identity, because no evidence showed that the informant had participated in the crime or was an eyewitness to the crime); Esparaza v. State, 595 So.2d 418, 424 (Miss.1992) (informant who did not witness the offense charged and did not serve as a witness in the proceeding, but merely provided data that established probable cause to support a search warrant, constituted too tenuous a link to justify, under Mississippi law, disclosing the informant’s identity); Arnett v. State, 532 So.2d 1003, 1008 (Miss.1988) (“There is no evidence in the record that the informant was a participant or an eyewitness to the crime, and consequently *726 disclosure of the witness was within the sound discretion of the trial judge....”).
¶ 19. As mentioned before, Mal-lette felt conflicted because she inadvertently had learned the informant was Hill’s roommate. Since the trial court ultimately ruled that the identity of the confidential informant could not be revealed to Hill, Mallette felt her obligations to the trial court and her obligations to Hill were now in conflict because the trial court was restricting her from instructing Hill to move for a mistrial, rather than resting his case, in order to call his roommate as a witness.
¶ 20. By instructing Mallette to refrain from counseling Hill on whether to rest his case, the trial court effectively left Hill without any type of counsel, advisory or otherwise. In Howard, v. State, this Court concluded that advisory counsel’s role in aiding the defense included “among other things, the necessity of preparing as adequately as possible to assume a more active role in the trial, should the need arise.” Howard v. State, 701 So.2d 274, 285 (Miss.1997). The defendant in Howard communicated to both standby counselors that he wanted them to present the closing arguments. Id. The trial judge ruled that standby counsel should prepare jury instructions, but that it was too late in the trial for them to begin arguing the case. Id. This Court pointed to the fact that the trial court had instructed Howard to use and rely upon the appointed standby counselors, even though he was representing himself, only to deny him the assistance the trial court had so encouraged. Id. This Court cited McKaskle v. Wiggins, in which the United States Supreme Court provided the following guidance:
Once the pro se defendant invites or agrees to participation by counsel, any subsequent appearances by counsel must be presumed to be within the defendant’s acquiescence, at least until the point that the defendant expressly and unambiguously renews his request that counsel be silenced.
Howard, 701 So.2d at 287 (citing McKaskle, 465 U.S. 168, 188, 104 S.Ct. 944, 953-54, 79 L.Ed.2d 122 (1984)).
¶21. Here, the trial court repeatedly attempted to convince Hill to seek assistance from Mallette, then later instructed Mallette to refrain from counseling Hill on whether to rest his case, because she had stated that she would counsel Hill to move for a mistrial in order to secure Hill’s roommate as a witness.
¶ 22. We must be clear that the roles and responsibilities of “full-fledged counsel” and advisory counsel are different and are not one and the same with regard to the protections of the Sixth Amendment right to counsel. U.S. v. Taylor, 983 F.2d 307, 312 (5th Cir.1991).
¶ 23. However, a problem arises when a defendant initiates the assistance of counsel and subsequently is denied such assistance. McKaskle, 465 U.S. at 183, 104 S.Ct. 944. As previously mentioned, Hill communicated to Mallette that he wanted her assistance on whether to rest his case. Thus, it is clear from the facts of this case that Hill had requested her full assistance on the matter. Id. The Mississippi Constitution states in part that “... the accused shall have a right to be heard by himself or counsel, or both.... ” Metcalf v. State, 629 So.2d 558, 562 (Miss.1993) (citing Miss. Const, art 3, § 26 (1890)). We must recognize the importance of reaching a balance between two imperative rights: the right of self-representation and the constitutional right of representation by counsel. Metcalf v. State, 629 So.2d at 562.
¶ 24. We find that the trial court erred by assigning Mallette as Hill’s advisory counsel while, at the same time, allowing *727 her to withdraw as his counsel because of a conflict of interest. The trial court again erred when Mallette was required to remain as advisory counsel once a conflict arose between her duty to the court and her duty to Hill.
CONCLUSION
¶ 25. This Court reverses Hill’s conviction for possession of a firearm while on educational property, and remands the case to the Oktibbeha County Circuit Court for a new trial consistent with this opinion.
¶ 26. REVERSED AND REMANDED.
WALLER, C.J., DICKINSON, P.J., LAMAR, CHANDLER AND KING, JJ., CONCUR. KITCHENS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON, P.J., CHANDLER AND KING, JJ., COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J.

. It is unnecessary to address the dissent's concern as to whether a Sixth Amendment right to advisory counsel exists, as that issue is not before us. However, we stress that, even though the trial court appoints counsel in an advisory capacity, such counsel is still obligated to provide the defendant with adequate assistance in accordance with the defendant’s requests.