WILSON, J.,
for the Court:
¶ 1. A defendant in a criminal case has a constitutional right to an attorney.[1] If he cannot afford an attorney, he has a right to have an attorney appointed for him.[2] He also has a right to a reasonably effective attorney.[3]
¶2. However, as this Court has reasoned, “a defendant - may not use his light to counsel to hinder trial.”[4] Thus, some courts have recognized that a trial judge “must have the ability to find that a defendant has forfeited his right to counsel” if the defendant repeatedly manufactures conflicts with court-appointed counsel for the purpose of delaying his trial and the proper administration of justice.[5] And other courts have held that “under certain circumstances, a defendant who is abusive toward his attorney' may forfeit the right to counsel.”[6]
¶ 3. The sole issue in this appeal is whether the defendant, Charles McCollum, forfeited or impliedly waived his right to counsel by his conduct toward his attorney. Prior to trial, McCollum filed a bar complaint against his court-appointed lawyer and told key witnesses that the lawyer was a liar who was not to be trusted. The Simpson County Circuit Court allowed McCollum’s attorney to withdraw on the eve of trial and refused to continue the trial or appoint á new attorney for McCol-lum. Consequently, McCollum represented' himself at trial, the jury convicted him of burglary and kidnapping, and the circuit court sentenced him to fífty-fívé years in *950 the custody of the Mississippi Department of Corrections. On appeal, McCollum alleges that he was “forced to proceed ... in violation of [his] right to counsel.” In response, the-.State confesses reversible error,.and we 'agree that we mpst reverse and remand for a new trial.[7] .
FACTS AND PROCEDURAL HISTORY
¶ 4. On September 5, 2012, Bill Russell, then eighty-nine years old, was assaulted in his home in Magee. The attacker beat Russell brutally, bound Russell’s feet and hands behind his back, ransacked the house, stole over $2,000 in cash, and left in Russell’s Chevrolet Lumina. A short time later, Simpson County Sheriffs Deputy Richard Harper observed a Lumina speeding down Highway 49. Deputy Harper followed the vehicle and turned on his blue lights, but the vehicle did not stop. The driver turned down a series of side roads, eventually drove the vehicle into a ditch, and fled on foot. Deputy Harper could not find the driver but ran the Lumina’s license plate and determined that it was registered to Russell. Deputy Harper knew Russell and doubted that the elderly man had driven the vehicle into a ditch and fled into the woods, so he went to Russell’s house to check on him. Deputy Harper found Russell bound and lying in a pool of blood. Russell was taken to Forrest General Hospital and later identified Charles McCollum as his assailant. Russell’testified that McCollum played sports with his sons years earlier and had recently stopped at his house looking for scrap iron.
¶5. On March 15, 2013, McCollum was indicted for burglary of a dwelling and kidnapping as a habitual offender. The same day, the circuit judge found that McCollum was indigent and signed an order appointing counsel for him.
¶ 6. A year later, on March 24, 2014, the circuit judge heard a motion to- withdraw filed by McCollum’s counsel.[8] McCollum’s trial was scheduled for April 2014, and McCollum did not believe that his attorney was capable of handling the case properly because counsel had two other trials and a mediation scheduled around the same time. McCollum’s counsel suggested to the circuit judge that if he continued the case until September or October, McCol-lum would be satisfied. After conferring with the State and McCollum, the judge agreed and continued the case until September 2014.
¶ 7. On Wednesday, September 17, 2014, five days before McCollum’s trial date, defense counsel again moved to withdraw. At a hearing the next day, counsel explained that there had been a total breakdown in the attorney-client relationship. McCollum had filed a bar complaint against counsel and had written letters to two key defense witnesses in which he warned that counsel was a liar who could not be trusted. As a result, the witnesses refused to talk to counsel or return his phone calls. Counsel argued that McCol-lum’s actions made it impossible to effectively represent him at trial,. Counsel also reported that he had met with McCollum several times but that McCollum was consistently deceptive and uncooperative. Finally, counsel informed the court that only ten minutes prior to the hearing, McCol-lum reiterated that he wanted to fire counsel.
¶,8. McCollum responded that he was sorry that counsel had seen the letters. *951 He said that someone else had advised him to file a bar complaint and he was “not sure [he] did the right thing on that.” McCollum stated that he did not want to fire counsel and did not want counsel to withdraw. McCollum acknowledged that he and his attorney “had problems in the past” but said they were just typical attorney-client problems. He concluded by telling the court, “Again, I’m not asking ... to fire [counsel] or for him to, withdraw[.]”
¶ 9. In response, the assistant district attorney, who had filed a “motion to proceed with trial,” argued that the case should be tried as scheduled. The prosecutor argued that the victim was ninety-one years old and that McCollum was well-versed in the rules of criminal procedure and might be deliberately seeking to delay his trial in the hope that the elderly victim would die before he could testify.
¶ 10. The circuit judge granted counsel’s motion to withdraw and the State’s motion to proceed with trial. The judge found that McCollum’s “intentional conduct ha[d] made it impossible for [his] court appointed counsel to continue to represent him.” Tlie judge also found that McCollum was “deliberately attempting to delay [his] trial.” The judge further found that the State would be prejudiced by a further continuance because it would “have no case” if the ninety-one-year-old victim died.
¶ 11. The judge stated he had “no choice but to let [McCollum] represent himself.” He noted that, as a habitual offender, McCollum was “very familiar with the working of the court and the criminal process.” The judge stated that McCollum could try to find a new lawyer by Monday (four days away), although that was “going to be hard ... to do.” The judge reasoned that a defendant’s right to counsel is “not absolute” and that it is within the court’s discretion to deny a last-minute request for a continuance. The court continued, ■
Since you had a court appointed counsel and you rejected him, I must now make a determination that • you understand what you’re doing and it’s voluntary, and that you have to know what you were doing.
As I stated before, you have the right to have an attorney. You can have one of your own choosing. If you can’t afford one, the Court will allow a person to sit with you during the trial, that person being an attorney..,. [I]f you have any question's at all you can ask that attorney during your representation of yourself. ■
The judge explained that representing oneself was “riot a very wise decision,” and he would allow McCollum to confer with armchair counsel at any point. The judge then appointed an attorney present in the courtroom as McCollum’s armchair counsel for trial.
¶ 12. McCollum again protested that he had not rejected his appointed counsel, and he denied telling counsel that he wanted to fire him just prior to the hearing. The judge stated that he found counsel, as.“an officer. of the court,” “more credible than [McCollum].” .
¶ 13. At a hearing on pretrial motions the next day (Friday), McCollum again requested court-appointed counsel. The judge again denied his request, telling him that he could consult with armchair counsel if he had any questions during trial.
¶ 14. The following Monday, McCollum represented himself at trial with armchair counsel available to consult. During voir dire, one member of the venire asked why McCollum was representing himself and whether he had time to’ get a lawyer. In response, the-judge informed the venire, *952 “Well, the history is he had a court appointed lawyer. He rejected that lawyer. He was given an opportunity to hire his own lawyer, which he did not do.”
¶ 15. At trial, McCollum testified that he had nothing to do with the attack on Russell. He claimed that he and Russell had gone on a four-day trip to Alabama together several months prior to the attack. According to McCollum, Russell asked him to help haul a truckload of watermelons back from Alabama, but McCollum later discovered that Russell was actually, using the truck to transport drugs. On cross-examination by McCol-lum, Russell denied that any such trip had occurred. The jury convicted McCollum on both counts but did not agree to impose a life sentence for kidnapping. See Miss. Code Ann. § 97-3-53 (Rev.2014). The court subsequently sentenced McCollum as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2015) to consecutive sentences of twenty-five years for burglary of a dwelling and thirty years for kidnapping. McCollum timely appealed.
ANALYSIS
¶ 16.' McCollum raises one issue on appeal: whether he was denied his right to counsel under the Sixth Amendment to the U.S. Constitution and Section 26 of the Mississippi Constitution. As noted above, the State concedes that McCollum’s constitutional rights were violated and that reversal is required. We agree that the record before us does not support a findr ing that McCollum impliedly waived or forfeited his right to counsel by his conduct. Therefore, we reverse and remand for a new trial.
¶ 17. A defendant may waive his right to counsel and represent himself. Patton v. State, 34 So.3d 563, 564-65 (¶ 3) (Miss.2010). However, an express waiver of the right to counsel must be “knowingly and intelligently made.” Id. at 565 (¶ 3). Uniform Rule of Circuit and County Court 8.05 sets forth the procedure a trial judge must follow when a defendant has voiced a desire to represent himself. The rule provides:
When the court learns that a defendant desires to act as his/her own attorney, the court shall on the record conduct an examination of the defendant to determine if the defendant knowingly and voluntarily desires to act as his/her own attorney. The court shall inform the defendant that:
1. The defendant has a right to an attorney, and if the defendant' cannot afford an attorney, the state will appoint one free of charge to the defendant to defend or assist the defendant in his/her defense.
2. The defendant has the right to conduct the defense and that thé defendant may elect to conduct the defense and allow whatever role (s)he desires'to his/her attorney.
3. The court will not relax or disregard the rules of evidence, procedure or courtroom protocol for the defendant and that the defendant will be bound by and have to conduct him-selfiherself within the same rules as an attorney, that these rules are not simple and that without legal advice his/her ability to defend himselfiher-self will be hampered.
4. The right to proceed pro se usually increases the likelihood of a trial outcome unfavorable to the defendant.
5. Other matters as the court deems appropriate.
After instructing the defendant and ascertaining that the defendant understands these matters, the court will ascertain if the defendant still wishes to *953 proceed pro se or if the defendant desires an attorney to assist him/her in his/her defense. If the defendant desires to proceed pro se, the court should determine if the defendant has exercised this right knowingly and voluntarily, and, if so, make the finding a matter of record. The court may appoint an attorney to assist the defendant on procedure and protocol, even if the defendant does not desire an attorney, but all disputes between the defendant and such attorney shall be resolved in favor of the defendant.
URCCC 8.05. “Thus, according to the rule’s mandatory provisions, the trial judge [is] required to advise [the defendant] — on the record — of his rights and the warnings set forth in the rule.” Patton, 34 So.3d at 567 (¶ 11). The trial judge must make sure that the defendant understands the rights and warnings and then ascertain whether he still wants to proceed pro se, or would rather be represented by an attorney. Id. If the defendant still wants to represent himself, the judge must then determine whether his waiver of the right to counsel is knowing and voluntary.. Id.
¶ 18. In this case, after allowing McCollum’s attorney to withdraw and granting the State’s motion to proceed to trial, the trial judge touched on some of the warnings and advisories set out in Rule 8.05. However, the record is clear that McCollum did not kriowingly and voluntarily waive his right to counsel. In fact, McCollum repeatedly told the cireiiit court that he did not want to represent himself and that he desired court-appointed’counsel. Thus, the issue in this case is not whether McCollum voluntarily waived his right to counsel. He did not. Rather, the issue is whether his conduct establishes a forfeiture of the right to counsel or what some courts have terms an “implied waiver” of the right.
¶ 19. As noted above, the State has confessed error and, thus, has not made any argument in defense of the trial judge’s ruling on these grounds. Notwithstanding this confession of error, we have an obligation to examine the record to determine whether the conviction should stand or be reversed. See Sibron v. New York, 392 U.S. 40, 58, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). There are no Mississippi cases directly addressing a defendant’s forfeiture or implied waiver of the right to counsel by conduct, but there are a number of decisions from other jurisdictions to which we may look for guidance.
¶ 20. As noted above, this Court has reasoned that “a-defendant may not use his right to counsel to hinder trial.” Lewis, 131 So.3d at 581 (¶ 9).[9] Consistent with this principle, the Massachusetts Supreme Judicial Court has held that an indigent defendant may be found to have impliedly waived his right to counsel if, for example, he “moves to remove his attorney without good cause, the motion is denied, and the judge warns the defendant that he will lose his right to an attornéy if he engages in dilatory or abusive conduct towards his attorney.” Commonwealth v. Means, 454 Mass. 81, 907 N.E.2d 646, 657 (2009). “If the defendant then engages in the very misconduct he was warned not to commit, the misconduct may be treated ‘as an implied request to proceed pro se and, thus, as a waiver of the right to counsel,’ because the defendant had been warned of the consequences of such misconduct.” Id. (quoting United States v. Goldberg, 67 *954 F.3d 1092, 1100 (3d Cir.1995)). “The key to waiver by conduct is misconduct occurring after an express warning has been given to the defendant about the defendant’s behavior and the consequences of proceeding without counsel.” Id, at 658.[10]
¶ 21. In this case, the record does not reflect an express warning to McCollum that he might waive the right to counsel by persisting in a course of conduct. Counsel’s initial motion to withdraw, which was heard in March 2014, was filed because counsel felt that he had insufficient time to prepare for trial due to- other trials and commitments. The judge resolved the issue by granting a continuance, and at the end of the hearing, McCollum stated on the record that he was “fíne” with counsel continuing to represent him. 'The judge stated that he understood McCollum’s concerns .about his attorney’s other trials. Nothing in the transcript indicates that McCollum had engaged in misconduct at the time of the hearing, which was held a year after counsel was appointed to represent him and six months prior to the eventual trial. In September 2014, after the judge had already found that McCollum had waived or forfeited, his right to appointed counsel, the.judge recalled that at a conference in Collins several months earlier he had admonished McCollum to cooperate with his lawyer and warned him that he “would be kind of neglectful if [he] represented [him]self.” However, the record does not reflect such a warning or conference. On the record before us, we are unable to say that McCollum received a sufficient warning that his conduct might result in a loss of his right to counsel. Accordingly, we cannot conclude that McCollum impliedly waived his right to counsel.
¶22. Other courts have “recognized that a defendant may be found to -have forfeited his right- to counsel- where he or she ‘engages in extremely serious misconduct ■... even though the defendant was not warned of the potential consequences of his or her actions or the risks associated with - self-representation.’” State v. Holmes, 302 S.W.3d 831, 840 (Tenn.2010) (quoting State v. Carruthers, 35 S.W.3d 516, 548 (Tenn.2000)). After surveying a number of cases on this issue from around the country, the Tennessee Supreme Court concluded that “these cases make clear that a criminal defendant’s constitutional right to the assistance of counsel is so fundamental, particularly at trial, that only the most' egregious misbehavior will support' a forfeiture of that right without warning and an opportunity to conform his or her conduct to an appropriate standard.” Id. at 846; The Tennessee Supreme Court held that
a defendant should not be found to have forfeited ... his right to counsel at trial on the basis of a single incident of physical violence unless the violence was extreme and (1) the defendant was previously warned that he could lose the right to counsel for such behavior; (2) there is evidence that the defendant engaged in the violence in order to manipulate the court or delay the proceedings; or (3) it is not possible to take other measures that will protect the safety of counsel.
Id. at 847 (emphasis added) (holding that the defendant did not forfeit his right to counsel by knocking off his attorney’s eyeglasses and telling him, “I know how to get rid of you”).
¶ 23. Without adopting all of the Tennessee Supreme Court’s reasoning, ’-we do agree that the great weight of authority holds that, in the absence of a prior wam- *955 ing, a defendant will not be found to have forfeited his right to counsel based on conduct of the type involved in this case. From the record before us, all that can be said is that McCollum was an uncooperative client who disparaged his court-appointed attorney and filed a bar complaint against him. We sympathize with the attorney involved, and we agree with the trial judge that a defendant should not be able to use his right to counsel as a means to delay criminal proceedings against him. However, unless the defendant has been warned that his conduct may result in loss of the right to counsel or engages in egregious misconduct such as physical'-violence, there is no basis for finding an implied waiver or forfeiture of that fight.
¶24. For the above reasons, we conclude that the State appropriately confessed error. Furthermore, a “total deprivation .of the right to counsel” is never harmless error and “will always invalidate the conviction.” Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (citing Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). Accordingly, we reverse McCollum’s convictions and remand the case for a new trial.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF SIMPSON COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SIMPSON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND JAMES, JJ., CONCUR. GREENLEE, J., NOT PARTICIPATING.

. U.S. Const. amend. VI; Miss. Const. art. 3, § 26.

. Gideon v. Wainwright, 372 U.S. 335, 344-45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. Lewis v. State, 131 So.3d 579, 581 (¶ 9) (Miss.Ct.App.2013),

. State v. Cummings, 199 Wis.2d 721, 546 N.W.2d 406, 419-20 (1996).

. United States v. McLeod, 53 F.3d 322, 325 (11th Cir.1995).

. The State correctly acknowledges that we are not bound by its concession. White v. State, 616 So.2d 304, 307 (Miss. 1993).

. The motion itself is not in the record or noted on the docket sheet; however, there is a transcript of the hearing.

. Cf. Hill v. State, 134 So.3d 721, 725 (¶ 15) (Miss.2014) ("Limitations must be enforced when considering appointing new counsel to circumvent any maneuvers that interfere with the 'orderly procedure in the courts or the fair administration of justice.’ ” (quoting Rubenstein v. State, 941 So.2d 735, 783 (¶ 215) (Miss.2006)) (alteration omitted)).

. The Means court noted that implied "waiver by conduct cannot be said to involve waiver in the purest sense” given that it involves no affirmative request to proceed pro se. Means, 907 N.E.2d at 657 n. 16.