# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CP-00575-COA

**DONALD MITCHELL A/K/A DONALD K. MITCHELL A/K/A "BLACK"**           **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/28/2015 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | DONALD MITCHELL (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | MOTION FOR POST-CONVICTION RELIEF SUMMARILY DISMISSED |
| DISPOSITION: | AFFIRMED - 02/28/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.     Donald Mitchell pled guilty to possession of cocaine with intent to distribute and was sentenced to thirty years in the custody of the Mississippi Department of Corrections (MDOC), with twenty years suspended and ten years to serve.  Mitchell had been indicted as a violent habitual offender and thus faced a life sentence without the possibility of parole if found guilty at trial.

¶2.     Mitchell subsequently filed a motion for post-conviction relief (PCR), claiming that

he received ineffective assistance of counsel and that his plea was involuntary. Both claims are based on Mitchell's allegation that his attorneys coerced him into pleading guilty and abandoned a meritorious motion to suppress evidence. The circuit court summarily dismissed Mitchell's PCR motion. We affirm because Mitchell's motion to suppress lacked merit; therefore, his attorneys did not provide ineffective assistance by advising him to accept the State's plea offer, and his plea was not involuntary.

## FACTS AND PROCEDURAL HISTORY

¶3. Donald Mitchell was indicted as a violent habitual offender, Miss. Code Ann. § 99-19-83 (Rev. 2015),[1] for possession of cocaine with intent to distribute. His indictment resulted from a search of an apartment on West Capitol Street in Jackson. Detective Kevin Dear of the Jackson Police Department obtained a warrant for the search from a Jackson municipal judge. Dear's signed statement of "Underlying Facts and Circumstances," which was attached to and specifically incorporated by reference in Dear's affidavit for the search warrant, stated as follows:

> In August of 2008, Detectives of the Jackson Police Department's Narcotics Division were told of a subject named "Black" who was operating a "trap house" on Capitol Street, at 2100 Capitol, in a red brick two story building. (A trap house is a residence that is used by the drug dealer during the hours that the dealer sells narcotics but one [in which] the dealer does not live.)
>
> The suspect "Black" was identified as Donald Mitchell, [and] was said to be a convicted felon. The suspect was said to be in possession of a substantial amount of crack cocaine.
>
> Anonymous sources have also called in tips to the Narcotics office

---

[1] Mitchell has prior convictions for manslaughter and drug possession.

giving very specific details of this subject's activities which were independently verified through our resources.

Also, on Wednesday, September 3, 2008, a black male in this parking lot by the back door to this apartment tried to flag undercover narcotics detectives down in an attempt to sell them illegal narcotics. The suspect was not apprehended due to him escaping on foot.

The residence is at 2100 Capitol Street, the bottom apartment on the western side of the building. The numbers have been removed preventing exact determination of the apartment number.

On September 4, 2008, Detectives spoke with a confidential and reliable source that has been proven reliable in the past by giving true and accurate information in the area of narcotics trafficking in and around the city of Jackson. This source states that the house is controlled by "Black" who the source identified as Donald Mitchell. The C.I. (confidential informant) stated that the back door to this apartment is where the transactions take place and that this door is "fortified," meaning there are dead fall locks using large pieces of wood which would prevent speedy entry by Police Officers.

This C.I. stated that he or she has seen a large amount of crack cocaine being stored and distributed at this location by this suspect and that the suspect is selling the cocaine from this apartment[,] and the C.I. states that he or she has seen this within the past twenty-four hours.

. . . Therefore, it is requested that a search warrant be issued for 2100 Capitol Street, bottom western apartment, which is operated and under the control of a subject named Donald Mitchell.

. . . .

[signature]
Detective Kevin Dear
Jackson Police Department
Narcotics Division [2]

¶4.     The municipal judge found that probable cause for the search existed and issued the

warrant. The return on the warrant states that it was received "on the 4th day of September

---

[2] Portions of the narrative were redacted at Mitchell's trial and are omitted above.

2008" and executed "on the 4th day of September 2008," with the date, month, and year handwritten on the form. On the warrant and the affidavit, however, the municipal judge wrote in "Aug" on the lines for the month. But as noted above, the affidavit specifically incorporates by reference Dear's signed statement of "Underlying Facts and Circumstances," which was also attached to the affidavit. Dear's statement specifically discusses events that occurred on September 3 and September 4. Obviously, the judge could not have witnessed an affidavit or issued a warrant based on events that did not occur for another month. The only logical conclusion that can be drawn is that "Aug" was a scrivener's error.

¶5.    Mitchell was represented at trial by privately retained counsel who filed a number of pretrial motions; however, he did not file a motion to suppress or any other motion alleging irregularity in the issuance or execution of the search warrant. At trial, the search warrant and the supporting affidavit, together with the attached Underlying Facts and Circumstances, were admitted into evidence as a single exhibit, S-2. The entire exhibit was also included in Mitchell's record excerpts in his direct appeal from his subsequent conviction. Dear testified at trial that the search warrant was issued on September 4, 2008. He also testified that he and other officers executed the search warrant "[o]n the same day [they] obtained it." Mitchell's brief in his initial appeal similarly stated that the judge granted the search warrant on September 4, 2008, and that officers executed the warrant the same day. On direct appeal, Mitchell did not raise any issue as to the validity of the search warrant.

¶6.    Following a jury trial, Mitchell was convicted of possession of cocaine with intent to distribute, and the circuit court sentenced him to life imprisonment without parole as a

4

violent habitual offender. On appeal, the Mississippi Supreme Court held that the circuit court abused its discretion by allowing the admission of evidence of Mitchell's prior convictions for drug possession. The Supreme Court therefore remanded Mitchell's case to the circuit court for a new trial. *Mitchell v. State*, 110 So. 3d 732, 735 (¶14) (Miss. 2013).

¶7. On remand, the Hinds County Public Defender's Office was appointed to represent Mitchell, and a different assistant district attorney represented the State. Mitchell's new attorney filed a motion to suppress, alleging that the search warrant was invalid because it was executed a month after it was issued in violation of Mississippi Code Annotated section 41-29-157(a)(3) (Rev. 2013)[3] and the Fourth Amendment to the United States Constitution. The motion attached the search warrant and affidavit and relied on the apparent scrivener's errors in those documents; however, the motion failed to attach the signed statement of Underlying Facts and Circumstances as part of the affidavit.

¶8. The motion was served on the State on October 9, 2013. The State offered to allow Mitchell to plead guilty as a non-habitual offender and to recommend a sentence of thirty years with twenty years suspended and ten years to serve. But the State told Mitchell that the offer would expire on October 10, 2013. In other words, Mitchell could either accept the

---

[3] This provision, which applies to warrants issued under the Uniform Controlled Substances Law, states that "[a] warrant issued pursuant to this section must be executed and returned within ten (10) days of its date unless, upon a showing of a need for additional time, the court orders otherwise." Miss. Code Ann. § 41-29-157(a)(3). Rule 4.3(1) of the new Mississippi Rules of Criminal Procedure (effective July 1, 2017) imposes the same requirement. A leading treatise states that courts have "sometimes" suppressed evidence because of noncompliance with such provisions, "though other courts are disinclined to require suppression where there is no Fourth Amendment violation." 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.7(a) (5th ed. 2012).

State's offer or litigate his motion to suppress, but he could not do both.

¶9.    At a hearing in the circuit court on October 10, 2013, Mitchell's counsel advised the

court as follows:

> I've explained to the defendant, and I'd like to put this on the record, that this is a case that he has already been found guilty by a jury one time, and it's been reversed by the [Supreme] [C]ourt, as the Court is well aware; that he is a [99-]19-83 habitual, meaning if the jury finds him guilty of anything in this case, he is facing life in prison.
>
> The State has put an offer on the table today that is 30 years, 20 suspended, 10 to serve.  I've explained to him, and the sticking point here is we -- and I understand his concern, and we have filed a motion which we have served on the State and on the Court, motion to suppress the evidence in this case based on a bad search warrant.
>
> The search warrant -- and the motion will be presented to the Court, but I've explained to him that the State has made this offer and that it expires today, as the State has informed me.
>
> If the offer goes off the table, then we have no choice but to go back to trial on this case; that if we go to trial and he is convicted again, he is facing life in prison.
>
> But I've explained to him that it is not -- I can't decide what this young man needs to do with his life.  This is his decision and his decision only.
>
> And I've explained to him that he needs to announce to the Court whether he wants to go ahead and accept the offer of the State, which is a 10 year sentence or -- and it's as a non-habitual with no enhancements, so he will be eligible for good time credit through the MDOC system, whatever credit that might be.  The lawyers are no longer allowed to advise what that realistically will mean.
>
> But I've explained to him that -- he understands the plea.  He understands that if we go back and he is found guilty, he is facing life in prison again.
>
> And I, of course, as an attorney I can't make a recommendation one way or another of how we will do at trial because I will never tell a client ever

we will win this or we will lose it. I just can't do that because I don't know.

That being said, it's his opportunity to announce to the Court whether he wants to accept the State's offer or whether he wants another trial.

¶10.   The court then asked Mitchell what he wanted to do, and Mitchell said that he wanted to pursue his motion to suppress and go to trial. Based on Mitchell's decision, the court began reviewing its schedule for an open trial date. The prosecutor then reiterated that the State's plea offer would be revoked based on Mitchell's decision. In response, Mitchell's attorney asked for a brief recess so that she and two other attorneys in her office "could speak with [Mitchell] for just a moment." The court agreed, stating, "I certainly don't want to rush him because I know it's a very important decision."

¶11.   After a brief recess, Mitchell informed the court that he wanted to accept the State's offer and plead guilty. Mitchell testified under oath that he had conferred with all three attorneys about his decision and that he was satisfied with the advice they had given him. He testified that he understood everything in his plea petition and that no one had threatened him or coerced him in any way in order to get him to plead guilty. The court advised Mitchell of the rights that he would waive by pleading guilty, and Mitchell testified that he understood. *See* URCCC 8.04(A)(4)(c). The State recited the factual basis of the plea, and Mitchell testified that he agreed with it. Mitchell then pled guilty, and the court found that his plea was entered freely and voluntarily after he had been advised of his rights by counsel and by the court.

¶12.   The prosecutor then reiterated the State's plea offer and recommended sentence of thirty years in MDOC custody, with twenty years suspended and ten years to serve. The

7

prosecutor advised the court that the State's offer was "based on some litigation risk associated with the search warrant, as well as an officer who was involved that was later indicted." The prosecutor stated that the "officer was subsequently acquitted," but there were "some issues surrounding" his indictment "that could come up at trial."[4] The court accepted the State's recommendation and sentenced Mitchell accordingly.

¶13. On May 19, 2015, Mitchell filed a PCR motion seeking to set aside his conviction. Mitchell's PCR motion attached his previously filed motion to suppress, with the search warrant and affidavit but *not* the statement of Underlying Facts and Circumstances. In his motion, Mitchell alleged that his lawyer gave him "erroneous" advice—specifically, that she told him that the circuit court "would deny his motion" to suppress and sentence him to life without parole upon conviction. Mitchell maintains that this was bad advice because the search warrant was "stale" and invalid. He alleges that he was thereby "coerced" into abandoning the motion and pleading guilty. The circuit court summarily dismissed Mitchell's motion without directing the State to respond.

**DISCUSSION**

¶14. We affirm the denial of Mitchell's PCR motion for a straightforward reason: the motion's foundational premise—that the search warrant was stale and invalid—is factually incorrect. The only logical conclusion that can be drawn is that the officers applied for and received the warrant on September 4, 2008, and executed it the same day. That the municipal judge mistakenly wrote "Aug" on the form affidavit and warrant is of no consequence. A

---

[4] Multiple officers were involved in the case. The prosecutor did not specify which officer was indicted and subsequently acquitted.

8

judge's scrivener's errors in an affidavit and warrant do not render the warrant invalid. *See, e.g.*, *United States v. Walker*, 534 F.3d 168, 171-72 (2d Cir. 2008).

¶15.    Because the allegations in the motion to suppress were factually inaccurate, the motion lacked merit, and Mitchell's attorneys did not provide ineffective assistance. A claim of ineffective assistance requires proof (1) that counsel's performance was seriously and objectively deficient *and* (2) that the defendant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Here, if Mitchell's retrial had again ended with a guilty verdict, he faced a mandatory sentence of life in prison without the possibility of parole. He alleges that his attorneys prevailed upon him to accept the State's offer of ten years to serve, with twenty years suspended, rather than pursue his motion to suppress. Based on the true facts, Mitchell's motion to suppress was frivolous. Therefore, his attorneys alleged advice to abandon the motion and accept a favorable plea offer simply cannot establish a claim of ineffective assistance of counsel.

¶16.    The above discussion draws primarily on the signed statement of Underlying Facts and Circumstances that was attached to and incorporated by reference in Dear's affidavit supporting the search warrant. Because Mitchell did not attach this document to his PCR motion, it is not part of the clerk's papers transmitted from the circuit clerk to this Court. However, for reasons that are not clear, the circuit clerk included the exhibits from Mitchell's trial as part of the record in this appeal. As noted above, the statement of Underlying Facts and Circumstances was part of exhibit S-2, admitted into evidence at Mitchell's trial, and was also included in his record excerpts in his prior appeal. Whether the document was properly

included in the record in this appeal ultimately is of no significance. It was part of the record in the Supreme Court in Mitchell's direct appeal, and this Court certainly can take judicial notice of Supreme Court files. *Crawford v. Fisher*, No. 2014-CA-01606-SCT, 2016 WL 7331043, at *2 (¶10) (Miss. Dec. 15, 2016). The same applies to Mitchell's trial transcript and his brief and record excerpts in his prior appeal.

¶17. The dissent says that Detective Dear's signed statement of Underlying Facts and Circumstances is "mysterious." There is no mystery. To be absolutely clear, the statement was attached to and expressly incorporated by reference as part of the affidavit supporting the application for the search warrant, and it was introduced into evidence together with the affidavit as exhibit S-2 at Mitchell's trial. These critical pages are missing from the record in *only* two places: (1) *Mitchell* omitted them from his post-remand motion to suppress, and (2) *Mitchell* again omitted them from his present PCR motion. We may take judicial notice of the complete affidavit because it is in the Supreme Court file as part of the record of Mitchell's prior trial and appeal. We are not required to pretend as though it does not exist, and Mitchell cannot cast doubt on its authenticity simply by failing to attach it to his own motions.

¶18. We also acknowledge that the State has not pointed out that Mitchell's argument is based on scrivener's errors. The circuit court dismissed Mitchell's motion without directing the State to respond, and the State's brief on appeal argues that the circuit court's ruling should be affirmed for other reasons. However, even if the State had confessed error, we would "have an obligation to examine the record to determine whether the conviction should

10

stand or be reversed." *McCollum v. State*, 186 So. 3d 948, 953 (¶19) (Miss. Ct. App. 2016) (citing *Sibron v. New York*, 392 U.S. 40, 58 (1968)). For the same reasons, regardless of whether the State notices the issue, we should not set aside a valid conviction based on a post-conviction claim that is founded on an evident scrivener's error.[5]

## CONCLUSION

¶19. In summary, Mitchell was presented with a clear decision: pursue his motion to suppress and risk a possible sentence of life without the possibility of parole or accept the State's offer of ten years to serve with twenty years suspended. He accepted the State's offer, apparently with the encouragement of his attorneys. Whatever the reasons for his attorneys' advice, they advised him well, because his motion to suppress was factually without merit. Mitchell did not receive ineffective assistance. Accordingly, we affirm.

¶20. **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

**GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., AND WESTBROOKS, J.**

**IRVING, P.J., DISSENTING:**

¶21. Because the majority has exceeded its authority under the appropriate parameters of appellate review by implicitly making findings of fact and reviewing matters not considered by the trial court, I am compelled to dissent.

---

[5] Mitchell also claims that his plea was involuntary, but his sole argument is that his plea was involuntary because of his attorneys' ineffective assistance. As his ineffective assistance claim is without merit, his involuntary plea claim necessarily fails as well.

11

¶22. Our standard of review of the judgment of the trial court in post-conviction relief matters is well settled and well known to this Court: "In reviewing a trial court's decision to deny a petition for post[-]conviction relief [an appellate court] will not reverse such a denial absent a finding that the trial court's decision was clearly erroneous." *Kirksey v. State*, 728 So. 2d 565, 567 (¶8) (Miss. 1999). Issues of law are reviewed de novo. *Moore v. State*, 986 So. 2d 928, 932 (¶13) (Miss. 2008).

¶23. The judgment of the trial court stated: "The court noting the Defendant has failed to comply with the statutory mandates regarding filing of petitions for post[-]conviction relief, nonetheless having reviewed the plea petition and transcript (attached hereto as Exhibits A and B) finds the petition should be and the same is hereby SUMMARILY DISMISSED."

¶24. So the question on appeal for this Court is whether the quoted judgment is clearly erroneous. Or the question may be asked another way: What facts are contained in Mitchell's plea petition and transcript of his plea colloquy that make the allegations of his PCR motion a sham? I say nothing. By affirming the judgment, apparently the majority implicitly finds enough but fails to point out or discuss those poignant facts. The next question then is on what basis does the majority make that determination, since the only thing that was placed before the trial court was Mitchell's motion for post-conviction relief, which contained, as exhibits, only the search warrant, the affidavit for the search warrant, and the return? The affidavit and search warrant are dated August 4, 2008. The return states that the search warrant was received on September 4, 2008, and was executed on September 4, 2008, at "162 hrs." It does not say whether the execution occurred in the a.m. or p.m. But more

12

importantly, "162 hrs" does not denote a time. In any event, there is a clear factual variance between the dates which, in my view, can only be explained and resolved by testimonies from the parties involved, the municipal judge and Officer Dear, who allegedly presented the statement of "Underlying Facts and Circumstances" to the judge.

¶25. The majority relies upon a mysterious, ***undated*** statement of "Underlying Facts and Circumstances," which the majority states was incorporated into the affidavit for the search warrant.[6] More specifically, the majority states:

> We affirm the denial of Mitchell's PCR motion for a straightforward reason: the motion's foundational premise—that the search warrant was stale and invalid—is factually incorrect. The only logical conclusion that can be drawn is that the officers applied for and received the warrant on September 4, 2008, and then executed it the same day. That the municipal judge mistakenly wrote "Aug" on the form affidavit and warrant is of no consequence. A judge's scrivener's errors in an affidavit and warrant do not render the warrant invalid.

The majority apparently misunderstands my use of the term "mysterious" in my discussion of the statement of "Underlying Facts and Circumstances." To be clear, I am only referring to how it could have mysteriously ended up in Mitchell's PCR appellate file when, as I state in footnote 1, it was not introduced as an exhibit or attached to his PCR motion in the PCR proceedings, and he did not include it in his record excerpts.

¶26. I do not take issue with the majority's assertion that the statement of "Underlying Facts and Circumstances" was introduced as exhibit 2 in Mitchell's trial, nor do I take issue

---

[6] I should point out that this statement of "Underlying Facts and Circumstances" is contained in an exhibit folder from Mitchell's previous trial and was mysteriously included in this record. I say mysteriously included because there was no hearing held; therefore, there could not be any exhibits admitted as a part of this record, and Mitchell did not include it in his record excerpts.

13

with the majority's assertion that we, as an appellate court, can certainly take judicial notice of what was introduced in Mitchell's trial proceedings, as borne out by the record on appeal of his conviction, which was Cause No 2011-KA-684. But as I discuss in this dissent, the fact that the statement of "Underlying Facts and Circumstances," along with the search warrant and affidavit for the search warrant, was introduced during Mitchell's criminal trial does not resolve the factual questions presented by his PCR motion.

¶27. I agree that a judge's scrivener's errors in an affidavit and warrant do not render the warrant invalid. But where is the testimony in this record that the judge committed scrivener's errors? If it exists, the majority has not pointed it out, and I have not been able to find it. For the majority to make such a statement as fact is indeed befuddling, because to conclude that the municipal court judge, who issued the warrant, made scrivener's errors is to engage in pure conjecture. And more troubling is the fact that the majority's conclusion—that the municipal judge made two scrivener's errors—appears to be premised on the notion that the date that Officer Dear said he received the warrant and the dates discussed in the "Underlying Facts and Circumstances" are absolutely accurate and controlling because these representations were made by a law enforcement officer. Are all law enforcement officers beyond reproach? I could understand the majority's position if there were conflicting or competing testimony on this point and the trial judge, as the fact-finder, had found that a scrivener's error had to have occurred based on the testimony that the trial judge chose to accept as true, but that is not the case.

¶28. With all due respect to the majority, nothing in this record proximally connects or

14

identifies the undated statement of "Underlying Facts and Circumstances" with the affidavit or search warrant other than Officer's Dear's testimony in Cause No. 2011-KA-684. I fully understand that the statement of "Underlying Facts and Circumstances" discusses activities that allegedly occurred on September 3 or 4, 2008, but that fact begs the primordial question, as it is not impossible nor necessarily improbable that the search warrant could have been issued without the statement of "Underlying Facts and Circumstances" being attached. And I take this position knowing full well that the affidavit in support of the search references a "sheet headed 'Underlying Facts and Circumstances.'" Suffice it to say that both the search warrant and affidavit in support of the search warrant are preprinted form documents. Therefore, that information is contained in every affidavit for a search warrant, even those that have yet to be executed. So the existence of that information in the affidavit for the search warrant certainly does not prove that the statement of "Underlying Facts and Circumstances" was indeed presented, although it may have been, to the municipal judge at the time the search warrant was issued.

¶29. The majority finds that Officer Dear's testimony during Mitchell's trial, which resulted in a conviction that was reversed on appeal, is sufficient to resolve the discrepancy between the dates of the affidavit and search warrant, and the date of the execution of the search warrant as reflected in the return. In that trial, according to the majority, Officer Dear

> testified that he and other officers executed the search warrant "[o]n the same day [they] obtained it." Mitchell's brief on appeal similarly stated that the judge granted the search warrant on September 4, 2008, and that officers executed the warrant the same day. On appeal, Mitchell did not raise any issue as to the validity of the search warrant.

15

¶30. I would agree with the majority that Officer Dear's testimony from the criminal trial would be sufficient to resolve the date discrepancies if he had been questioned by Mitchell's counsel during that trial regarding the discrepancies between his testimony and the dates of the search warrant and affidavit for the search warrant. That did not occur, which raises the specter of whether counsel was ineffective in that trial for not doing so, even suggesting in his appellate brief that the search warrant was issued on September 4, 2008, when the date on the face of the warrant contradicted that statement. Moreover, I know of no authority holding that Mitchell's new counsel on retrial after remand was bound by any decisions made by Mitchell's previous attorney, especially if that attorney had rendered ineffective assistance. Further, a PCR motion is a civil matter, separate and apart from the criminal trial. Therefore, if Mitchell made, and I believe that he did, a prima facie showing in his PCR motion that he had received ineffective assistance during proceedings leading up to his retrial, I believe it was incumbent upon the trial judge to require the State to respond prior to summarily dismissing Mitchell's PCR motion. So I believe the majority errs by relying upon Officer Dear's unchallenged testimony in Mitchell's criminal trial to clear up factual questions raised by the PCR documents. I think this is especially true since, as stated, the issue of the validity of the search warrant was not an issue in the criminal trial. We cannot assume that Officer Dear's testimony was truthful as to when the warrant was issued and that that was the reason there was no challenge to the validity of the search warrant.

¶31. After Mitchell's initial conviction was reversed, the mandate was issued May 3, 2013, and on June 7, 2013, the circuit court executed an order setting a new trial date of October

16

14, 2013, and a plea date of October 4, 2013. On June 12, 2013, Mitchell's attorney filed a "Motion for Discovery and Request for Plea Offer and Other Relief," which requested, among other things, "[a]ny affidavit or affidavits and the underlying facts and circumstances which preceded the issuance of the arrest and/or search warrant or warrants, if any, filed against [Mitchell,] along with copies of the arrest warrant or warrants and copies of the search warrant or warrants, if any."

¶32.   Apparently, the State did not respond to Mitchell's discovery motion because the docket reflects that on August 27, 2013, Mitchell filed a "Motion to Compel Search Warrant."[7]  The docket also reflects that on October 10, 2013, Mitchell's attorney filed a motion to suppress evidence, but there is no indication that this motion was brought on for hearing prior to Mitchell entering his guilty plea.

¶33.   On the same date, October 10, 2013, that Mitchell's attorney filed the motion to suppress evidence, Mitchell entered the guilty plea that lies at the root of this appeal. Before entering the guilty plea, and at the beginning of what turned out to be a plea hearing, the court asked, "Are we ready to proceed?" and Mitchell's counsel[8] stated:

---

[7] The motion to compel is not included among the papers in the appellate record. But it would not be unreasonable to assume that maybe the State had something to hide for not timely disclosing the search warrant. Also, a plausible inference could be drawn that during Mitchell's trial, he may not have known of the discrepancies in the dates of the search warrant and the date of the execution of the warrant. Otherwise, why was he pushing his new trial counsel to get the documents if he knew that they would show that everything was in order? Surely, it would not be of any benefit to him to pursue the documents for the fun of it.

[8] Mitchell's defense counsel was a member of the Hinds County Public Defender's Office.

17

Yes, Your Honor, but I'm going to - - I've explained to the defendant, and I'd like to put this on the record, that this is a case that he has already been found guilty by a jury one time, and it's been reversed by the Court, as the [c]ourt is well aware; that he is a [99-]19-83 habitual, meaning if the jury finds him guilty of anything in this case, he is facing life in prison. The State has put an offer on the table today that is 30 years, 20 suspended, 10 to serve. I've explained to him, and the sticking point here is we - - and I understand his concern, and we have filed a motion which we have served on the State and on the [c]ourt, motion to suppress the evidence in this case based on a bad search warrant. The search warrant - - and the motion will be presented to the [c]ourt, but I've explained to him that the State has made this offer and that it expires today, as the State has informed me.

If the offer goes off the table, then we have no choice but to go back to trial on this case; that if we go to trial and he is convicted again, he is facing life in prison.

But I've explained to him that it is not - - I can't decide what this young man needs to do with his life. This is his decision and his decision only.

And I've explained to him that he needs to announce to the Court whether he wants to go ahead and accept the offer of the State, which is a 10 year sentence or - - and it's as a non-habitual with no enhancements, so he will be eligible for good time credit through the MDOC system, whatever credit that might be. The lawyers are no longer allowed to advise what that realistically will mean.

But I've explained to him that - - he understands the plea. He understands that if we go back and he is found guilty, he is facing life in prison again. And I, of course, as an attorney I can't make a recommendation one way or another of how we will do at trial because I will never tell a client ever we will win this or we will lose it. I just can't do that because I don't know.

That being said, it's his opportunity now to announce to the Court whether he wants to accept the State's offer or whether he wants another trial.

The trial court then asked, "What's your desire, Mr. Mitchell?" Thereafter, the following occurred:

BY MR. MITCHELL: I would like to file my motion to suppress the search warrant and go back to trial then. We'll go to trial, sir.

18

BY THE COURT: It's my understanding that the motion to suppress is already filed.

BY DEFENSE COUNSEL: Yes, sir. It has been filed.

BY THE COURT: So that part of your request has already been taken care of, and we'll put you back on the trial docket. Your case will not go to trial, however, on the date that it is presently set. That is a civil term. We set cases as backup possibility. One of those civil cases is going to go, so the 14th is out. So you will be given a new trial date.

BY THE COURT ADMINISTRATOR: December the 9th.

BY THE COURT: December the 9th.

BY THE PROSECUTOR: And, Your Honor, the considerably low offer extended by the State today is revoked.

BY THE COURT: Okay.

BY DEFENSE COUNSEL: Your Honor, the Court's indulgence. If Mr. - - Marvell [Gordon] and Yemi [Kings][9] could speak with him for just a moment. Just one more minute.

¶34. After the defense counsel asked the court's indulgence, the court stated:

Okay. We're going to hold - - I've been accommodating Mr. Mitchell now for about the past 45 minutes holding a lot of people here while he's trying to make his decision, and I certainly don't want to rush him because I know it's a very important decision.

* * * *

But he's got 15 more minutes, and we're leaving today.

---

[9] Messrs. Gordon and Kings are also members of the Hinds County Public Defender's Office.

¶35. When the court reconvened after the fifteen-minute recess, the court commenced the plea qualification hearing and asked the standard questions of Mitchell and received the standard responses, including Mitchell's statement that he was satisfied with the advice that Yemi and Marvell had given him. Conspicuously absent from the colloquy that occurred were any questions regarding Mitchell's understanding about the validity of the search warrant, which formed the backbone of the charges against him. While he was told that he could challenge the admissibility of the evidence that the State proposed to offer against him if he chose to go to trial, such knowledge would not be of any benefit to him in trying to assess whether he should go to trial unless he also understood the probability of the chance that the State would be thwarted in its efforts.

¶36. Based on the unanswered factual questions surrounding the issuance of the search warrant and the failure of the trial court to require the State to respond to the allegations of Mitchell's PCR motion before summarily dismissing the motion, I would reverse the judgment of the circuit court and remand this case for an evidentiary hearing to address what Mitchell's counsel, Marvell, and Yemi told him regarding the validity of the search warrant before he entered his guilty plea. I arrive at this conclusion, in part, because the transcript arguably shows that Mitchell's counsel engaged in a hard-sell to convince Mitchell to accept the State's offer even after Mitchell had made it clear that he wanted to "file [his] motion to suppress the evidence and go to trial"—even calling in two of counsel's associates to help convince Mitchell that he should plead guilty—all before testing the validity of the search warrant.

¶37. I also arrive at this conclusion because, in my view, it is unquestionably clear that the judgment of the trial court cannot be affirmed without this Court making specific findings of fact supported, as stated, by nothing more than conjecture and an apparent willingness to do so to assist the prosecution in its dereliction of duty. That seems apparent from the majority's acknowledgment that, in this appeal, "the State has not pointed out that Mitchell's argument is based on scrivener's errors," which is the fulcrum of the majority's rationale. In light of the statement made by the State during the plea colloquy—that there were issues associated with the warrant and the officer involved—might the reason for the State not making the argument that undergirds the majority's rationale be that there is some merit to Mitchell's contentions?

¶38. It is difficult to understand Mitchell's counsel's action in light of the fact that Mitchell's trial was not scheduled to take place until December 9, 2013, approximately two months from the date the plea was taken. It seems that period of time should have afforded counsel an ample opportunity to get the motion to suppress heard. While the State had indicated that the offer would not stay on the table until then, that was of no moment since it was Mitchell's choice to pursue the motion to suppress the search warrant.

¶39. It is even more difficult for me to understand why this Court is unable to discern the necessity for an evidentiary hearing to flesh out the time issues surrounding the issuance and execution of the search warrant and what advice Mitchell's attorney(s) gave him immediately prior to his entering his guilty plea. It is clear to me that the allegations of Mitchell's PCR motion and the documents that he attached make out a prima facie case that his counsel may

21

have been ineffective, despite the fact that Mitchell received a much lighter sentence than he would have received had he gone to trial and been convicted, because this argument presupposes the validity of the search warrant—an argument I cannot embrace because of the unanswered questions presented.

¶40. Our Constitution means nothing if our courts are unwilling to accept that its protections of due process also extend to the repeat criminal. For the reasons presented, I dissent. I would reverse the summary dismissal of Mitchell's PCR motion for an evidentiary hearing on the issues discussed herein.

**LEE, C.J., AND WESTBROOKS, J., JOIN THIS OPINION.**